712 F.2d 1509
 26 Wage & Hour Cas. (BNA) 466, 98 Lab.Cas. P 34,418
 Raymond J. DONOVAN, Secretary of Labor, United States
Department of Labor, Plaintiff, Appellee,
v.
David AGNEW, et al., Defendants, Appellants.
Raymond J. DONOVAN, Secretary of Labor, United States
Department of Labor, Plaintiff, Appellant,
v.
David AGNEW, et al., Defendants, Appellees.
 Nos. 83-1102, 83-1133.
 United States Court of Appeals,
First Circuit.
 Argued June 6, 1983.
Decided July 25, 1983.
 
 Richard P. Ward, Boston, Mass., with whom Ropes & Gray, Boston, Mass., was on brief, for David Agnew and Charles Bradley.
 Claire Brady White, Dept. of Labor, Washington, D.C., with whom T. Timothy Ryan, Jr., Sol. of Labor, Beate Bloch, Associate Sol., Ruth E. Peters, Washington, D.C., Counsel for Appellate Litigation, and Albert H. Ross, Regional Sol., Boston, Mass., were on brief, for Raymond J. Donovan.
 Before COFFIN and BREYER, Circuit Judges, and SELYA,* District Judge.
 COFFIN, Circuit Judge.
 
 
 1
 The Secretary of Labor ("the Secretary") brought this action in May of 1981 against Maxim Industries, Inc. and appellants[1] David Agnew and Charles Bradley, alleging violations of the minimum wage and overtime compensation provisions of the Fair Labor Standards Act ("the FLSA"), 29 U.S.C. § 201 et seq. Maxim Industries, now bankrupt, was a Massachusetts corporation engaged in the manufacture of fire trucks at a plant in Middleborough, Massachusetts. The Secretary's action resulted from Maxim's failure to pay 99 hourly employees and eight salaried managerial employees for work performed over two to three weeks in January of 1981, just prior to the closing of its Middleborough plant.
 
 
 2
 After cross motions for summary judgment, the district court conducted an evidentiary hearing limited to the issue of whether appellants as well as Maxim Industries were "employers" under the Act and thus personally liable for the alleged violations. In a March 1982 opinion the court held that they were. Shortly thereafter, Maxim Industries having entered bankruptcy, the district court, on the Secretary's motion, allowed a voluntary dismissal of the case as against Maxim.
 
 
 3
 Based on the parties' stipulation of unpaid wages, the court in December of 1982 ordered the payment of such wages to each of the 99 hourly wage employees, rejecting appellants' contention that the Secretary had failed to establish coverage of those employees under the FLSA. The court found, however, that the eight salaried managerial employees continued to be exempt from FLSA coverage despite nonpayment of their salaries.
 
 
 4
 Agnew and Bradley appeal the court's two rulings, 552 F.Supp. 1027 and 522 F.Supp. 1024, that they are employers and that the Secretary has established coverage; the Secretary cross appeals the exemption of the managerial employees.
 
 I. Employer Status
 
 5
 The FLSA requires that employers pay to covered employees a minimum hourly wage. 29 U.S.C. § 206. "Employer" is defined to "include[ ] any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Taken literally this language would support liability against any agent or employee with supervisory power over other employees. It has, indeed, been interpreted expansively. In determining employer status, "economic reality" prevails over technical common law concepts of agency. Goldberg v. Whitaker, 366 U.S. 28, 33, 81 S.Ct. 933, 936, 6 L.Ed.2d 100 (1961). There may be several simultaneous employers. Falk v. Brennan, 414 U.S. 190, 195, 94 S.Ct. 427, 431, 38 L.Ed.2d 406 (1973); Hodgson v. Arnheim & Neely, Inc., 444 F.2d 609, 611-12 (3d Cir.1971).
 
 
 6
 The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages. See, e.g., Donovan v. Sabine Irrigation Co., Inc., 695 F.2d 190, 194-95 (5th Cir.1983), cert. denied, --- U.S. ----, 103 S.Ct. 3537, 76 L.Ed.2d ---- (1983); Marchak v. Observer Publications, Inc., 493 F.Supp. 278, 282 (D.R.I.1980); Brennan v. Whatley, 432 F.Supp. 465, 469 (E.D.Tex.1977); Hodgson v. Royal Crown Bottling Co., 324 F.Supp. 342, 347 (D.Miss.1970), aff'd, 465 F.2d 473 (5th Cir.1972); Schultz v. Chalk-Fitzgerald Construction Co., 309 F.Supp. 1255 (D.Mass.1970); cf. Chambers Construction Co. v. Mitchell, 233 F.2d 717, 724-25 (8th Cir.1956) (corporate officer within definition of "employer"; therefore trial judge did not abuse discretion in making injunction run against him personally). Personal liability has been found even against a corporate officer who lacks an ownership interest in the corporation, Sabine Irrigation Co., Inc., supra, 695 F.2d at 194-95; or who has minimal ownership interest, Usery v. Weiner Bros., Inc., 70 F.R.D. 615, 617 (D.Conn.1976).
 
 
 7
 The district court here found that during the relevant period Maxim Industries, Inc. was wholly owned by Maxim, Inc., which in turn was owned by appellants Agnew and Bradley, who together were President, Treasurer, Secretary and sole members of the Board of Directors of Maxim Industries, Inc.[2] It found that both appellants maintained offices at Maxim Industries' Middleborough plant and that both were actively engaged in the management, supervision and oversight of Maxim Industries' affairs, including employee compensation and benefits.
 
 
 8
 The court found specifically that appellant Agnew was personally responsible for allowing the company's worker's compensation insurance to lapse in derogation of its legal responsibility and personally took responsibility for making banking arrangements when informed in late 1980 that Maxim's payroll account could not cover its weekly payroll; and that appellant Bradley, during the latter part of 1980, personally supervised the cash flow of the company on a day to day basis, was personally involved in decisions about layoffs and employee overtime hours, and met frequently with the union president regarding the company's failure to make payments to the employees' pension plan, health insurance plan, and workers' compensation program. Specifically as regards the company's failure to pay wages during the last days of the company's operations, the court found that "Agnew and Bradley as principals of the firm knowingly undertook a calculated risk to keep the plant open, in spite of layoff recommendations from the bank, the union, and their own managers, and in spite of the company's inability fully to fulfill its statutory obligations to its employees."
 
 
 9
 Because the court conducted a full evidentiary hearing on the issue of appellants' employer status and entered findings of fact, we will not set aside those findings unless they are clearly erroneous. Rule 52(a) Fed.R.Civ.P. They are not. The question before us, then, is whether corporate officers with a substantial ownership interest in the corporation who are directly involved in decisions affecting employee compensation may be held personally liable for the corporation's failure to pay minimum and overtime wages as required under the FLSA.
 
 
 10
 Appellants contend that Congress did not intend to impose personal liability upon principals of a bona fide corporation except in those extraordinary circumstances--the corporation has been used as a personal conduit or there has been inadequate capitalization or fraud--that warrant "piercing the corporate veil" at common law. Acknowledging the weight of precedent to the contrary, appellants recommend to us the reasoning of two older district court decisions--Mitchell v. Jaco Pants, Inc., 14 W.H. Cases 245 (M.D.Ga.1959) and Goldberg v. Pure Ice Co., 45 CCH Labor Cases p 31,296 (E.D.Ark.1962). Both courts distinguished between holding a corporate officer or stockholder personally liable and making him personally subject to an injunction. As the court reasoned in Pure Ice Co.,
 
 
 11
 "[I]t is one thing to say that an individual officer or stockholder may be subjected to an injunction; it is quite another thing to say that merely because an individual connected with a corporation may fall within the statutory definition of an 'employer' such individual becomes liable personally for wages due employees under the Act.... Such personal liability should be imposed only where in ordinary civil litigation the corporate entity would be ignored and personal liability for corporate debts imposed on the individual involved."
 
 
 12
 The individual defendant in the Pure Ice case was president of the corporation and owned 75 per cent of its stock. On appeal, the Eighth Circuit affirmed but did not adopt the district court's reasoning, relying instead on facts indicating that the defendant was not directly involved in the operation of the company. The court indicated that it might reach a different result if there were "a combination of stock ownership, management, direction and the right to hire and fire employees." Wirtz v. Pure Ice Co., 322 F.2d 259, 263 (8th Cir.1963).
 
 
 13
 Appellants also argue by way of analogy to the National Labor Relations Act ("the Act"), under which corporate officers have not been held personally accountable for the corporation's backpay liability absent circumstances equivalent to those that would justify piercing the corporate veil at common law.[3] See Concrete Mfg. Co., 262 NLRB No. 92 (1982); Chef Nathan Sez Eat Here, Inc., 201 NLRB 343 (1973); Riley Aeronautics Corp., 178 NLRB No. 495 (1969). Appellants urge that reference to NLRA precedent is apt in interpreting the scope of the term "employer" under the FLSA because when enacted in 1935, three years before the enactment of the FLSA, the NLRA defined employer as does the FLSA. They also point out that the legislative history of the Taft-Hartley amendments to the NLRA, which amended the NLRA's definition of employer, indicates that Congress' intent in the original definition was to make employers liable for the acts of their agents, not vice versa.
 
 
 14
 The NLRA now defines "employer" to "include[ ] any person acting as an agent of an employer, directly or indirectly...." 29 U.S.C. § 152(2). The legislative history of the Taft-Hartley amendments indicates that Congress, in amending the definition of employer, was responding to the Labor Board's expansive interpretation of the original definition, under which employers had been held responsible for the acts of others beyond common law principles of agency.
 
 
 15
 "Under existing law 'employer' is defined to include any person acting in the interest of an employer. The House bill changed this so as to include as an employer only persons acting as agents of an employer. This was done for the reason that the Board has on numerous occasions held an employer responsible for the acts of subordinate employees and others although not acting within the scope of any authority from the employer, real or apparent." H.R. No. 510, 80th Cong., 1st Sess. (1947), reprinted in 1947 U.S.Code Cong. Service 1135, 1137.
 
 
 16
 Appellants' analysis is not without merit, and we follow it to a certain point. We agree that it should not lightly be inferred that Congress intended to disregard in this context the shield from personal liability which is one of the major purposes of doing business in a corporate form. It is difficult to accept, as the Secretary argues and as some courts have apparently held, that Congress intended that any corporate officer or other employee with ultimate operational control over payroll matters be personally liable for the corporation's failure to pay minimum and overtime wages as required by the FLSA.
 
 
 17
 Nor do we think too much weight can be put on the Act's broadly inclusive definition of "employer". Taken literally and applied in this context it would make any supervisory employee, even those without any control over the corporation's payroll, personally liable for the unpaid or deficient wages of other employees. It makes more sense, as appellants argue, to interpret that language as intended to prevent employers from shielding themselves from responsibility for the acts of their agents.
 
 
 18
 But neither does the language of the Act in defining employer support appellants' contention that officers in a bona fide corporation can never be held personally liable for unpaid wages. Looking beyond that single section, it is clear that Congress did not intend to incorporate the common law parameters of the employer-employee relationship. Unlike the NLRA, the FLSA defines "employee" to "mean[ ] any individual employed by an employer." 29 U.S.C. § 203(e)(1); the term was thus given what Senator Black described on the floor of the Senate as " 'the broadest definition that has ever been included in any one act.' 81 Cong.Rec. 7657." United States v. Rosenwasser, 323 U.S. 360, 363 n. 3, 65 S.Ct. 295, 296 n. 3, 89 L.Ed. 301 (1945).
 
 
 19
 To gauge the scope of the employer-employee relationship in particular contexts, the Supreme Court has looked not only to the definitions of employer and employee but to the entire remedial context of the Act.
 
 
 20
 "[T]here is in the Fair Labor Standards Act no definition that solves problems as to the limits of the employer-employee relationship under the Act.... The definition of 'employ' is broad.... 'This Act contains its own definitions, comprehensive enough to require its application to many persons and working relationships which, prior to this Act, were not deemed to fall within the employer-employee category.' " Rutherford Food Corp. v. McComb, 331 U.S. 722, 728-29 [67 S.Ct. 1473, 1475-76, 91 L.Ed. 1772] (1947) (quoting Walling v. Portland Terminal Co., 330 U.S. 148, 152 [67 S.Ct. 639, 641, 91 L.Ed. 809] (1947)).
 
 
 21
 The Court has not looked to "technical" common law concepts to define the scope of the employer-employee relationship under the Act, but rather to "economic reality". Goldberg v. Whitaker House, supra, 366 U.S. at 33, 81 S.Ct. at 936; Rutherford Food Corp., supra, 331 U.S. at 729, 67 S.Ct. at 1476.
 
 
 22
 Significantly, the Supreme Court initially applied the same broad "economic reality" analysis to determine the scope of the employment relationship under the NLRA, NLRB v. Hearst Publications, 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170 (1944) ("[T]he broad language of the Act's definitions, which in terms reject conventional limitations on such conceptions as 'employee', 'employer', and 'labor dispute', leaves no doubt that its applicability is to be determined broadly, in doubtful situations, by underlying economic facts rather than technically and exclusively by previously established legal classifications."), and under the Social Security Act, Bartels v. Birmingham, 332 U.S. 126, 130, 67 S.Ct. 1547, 1549, 91 L.Ed. 1947 (1947); United States v. Silk, 331 U.S. 704, 713, 67 S.Ct. 1463, 1468, 91 L.Ed. 1757 (1947). But in the case of those two Acts, Congress has expressly overruled the Court's expansive interpretation. The Taft-Hartley Act amended the NLRA's definition of "employee" to exclude "any individual ... having the status of an independent contractor", 29 U.S.C. § 152(3), specifically overruling NLRB v. Hearst Publications, Inc., supra. H.R. No. 510, supra, at 1138. Similarly, Congress acted in 1948 to correct any suggestion in the Silk and Bartels cases that the scope of the employer-employee relationship should be construed as broader than that at common law. S.Rep. No. 1255, 80th Cong., 2d Sess. (1948), reprinted in 1948 U.S.Code Cong. Service 1752, 1753.
 
 
 23
 By contrast, despite having revisited the FLSA in 1949 (63 Stat. 910), 1956 (70 Stat. 1118), 1961 (75 Stat. 65), 1963 (77 Stat. 56), 1966 (80 Stat. 830), 1974 (88 Stat. 55), and 1977 (91 Stat. 1245), Congress has never contradicted the Court's broad, "economic reality" interpretation of the Act. It is true that Supreme Court precedent applying an "economic reality" rather than a common law analysis of the employer-employee relationship has been in the context of determining whether an individual or group of individuals should be excluded from the Act's coverage of employees as independent contractors. But lower court decisions disregarding the corporate form to find individual corporate officers "employers" within the meaning of the Act are not of such recent vintage that we can be sure that they have escaped Congress' attention.
 
 
 24
 Taking an "economic reality" approach to the facts of this case, we find that the district court did not err in holding appellants personally liable for the unpaid wages of their 99 hourly employees. Our holding is narrow. We review the liability of corporate officers with a significant ownership interest who had operational control of significant aspects of the corporation's day to day functions, including compensation of employees, and who personally made decisions to continue operations despite financial adversity during the period of nonpayment. Cf. Wirtz v. Pure Ice Co., supra, 322 F.2d at 263. Under these circumstances, we agree with the district court's holding that appellants were employers within the meaning of the Act chargeable with personal liability for failure to pay minimum and overtime wages as required by the FLSA.
 
 II. Coverage under the Act
 
 25
 The FLSA requires that "[e]very employer shall pay to each of his employees who in an workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce" minimum wage rates. 29 U.S.C. § 206 (emphasis added). Appellants argue that the Secretary has not established "jurisdictional coverage" of appellants' hourly employees under that section or under the similar provisions of § 207 for overtime wages.
 
 
 26
 We first note that whether or not the Secretary ultimately has demonstrated such coverage does not implicate in any way the subject matter jurisdiction of the district court or this court. See Marchak, supra, 493 F.Supp. at 278.
 
 
 27
 "Jurisdiction, therefore, is not defeated as respondents seem to contend, by the possibility that the averments might fail to state a cause of action on which petitions could actually recover. For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction. Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy. If the court does later exercise its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction." Bell v. Hood, 327 U.S. 678, 682 [66 S.Ct. 773, 776, 90 L.Ed. 939] (1946) (citations omitted).
 
 
 28
 This is true, a fortiori, where as here there is no allegation that the complaint is not legally sufficient. To hold otherwise would turn every federal claim that fails on the merits into a dismissal for lack of jurisdiction.
 
 
 29
 The Secretary's complaint alleged "enterprise coverage" under 29 U.S.C. § 206 as defined by § 3(s)(1) of the FLSA, 29 U.S.C. *1515s 203(s)(1). Appellants denied that allegation. Section 3(s)(1) provides in relevant part that,
 
 
 30
 " 'Enterprise engaged in commerce or in the production of goods for commerce' means an enterprise which has employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, and which ... is an enterprise ... whose annual gross volume of sales made or business done is not less than $250,000 (exclusive of excise taxes at the retail level which are separately stated )." (Emphasis added.)
 
 
 31
 The Secretary attempted to establish that Maxim was an enterprise engaged in commerce through requests for admissions establishing the essential aspects of the definition, including "[t]hat during the year up to and including the pertinent period, the annual gross volume of sales made or business done by Maxim exceeded $250,000." Appellants admitted that assertion.
 
 
 32
 In December of 1981, after cross motions for summary judgment had been made, appellants, in their opposition to the Secretary's supplemental motion for summary judgment, raised the issue of coverage under the Act.
 
 
 33
 "[T]here is still in dispute, as is seen by the pleadings, substantial factual issues not established, such as those set forth in paragraph IV of the Complaint which set forth the facts necessary to establish jurisdiction under the Act, i.e., that the defendants were an 'enterprise' within the meaning of Section 3(s)(1) of the Act."
 
 
 34
 They did not at that time spell out their basis for asserting that the Secretary had failed to establish coverage.
 
 
 35
 After the court had held, following an evidentiary hearing, that appellants were "employers" under the Act and after the parties had stipulated the names of unpaid employees and the amounts due each, the Secretary moved in September of 1982 for entry of judgment. In a memorandum opposing the Secretary's motion, appellants detailed for the first time the basis of their assertion that the Secretary had failed to demonstrate coverage under the Act of the unpaid employees.
 
 
 36
 "Under Section 3(s) of the Act, the plaintiff was required to prove with respect to the alleged 'enterprise' that its 'annual gross volume of sales made or business done is not less than $250,000 (exclusive of excise taxes at the retail level which are separately stated)".... The plaintiff has not proven this jurisdictional prerequisite.... With respect to annual sales the individual defendants have only admitted that annual sales or business done by Maxim Industries exceeded $250,000. There is no proof by the plaintiff and no request for admissions that shows whether this $250,000 figure is 'exclusive of excise taxes at the retail level.' " (Emphasis added.)
 
 
 37
 The Secretary argued in response that the appellants' admission of the $250,000 dollar amount, even without the parenthetical exclusion of amounts paid as excise taxes, was sufficient to establish coverage, and that if there were a genuine issue as to coverage that appellants should have denied or at least qualified their admission. The Secretary further asserted,
 
 
 38
 "In attempting to reopen the question of whether the dollar volume coverage test has been met, defendants imply that a factual issue persists. Defendants know full well, however, that Maxim Industries, Inc., during the pertinent period, exceeded the $250,000 minimum at least ten-fold. Should the court desire, however, the plaintiff is fully prepared to introduce such evidence on short notice and without requiring more than thirty minutes of the court's time."
 
 
 39
 The court, apparently finding no need for further demonstration of coverage, granted the Secretary's motion for summary judgment with regard to the hourly wage employees and found "no merit to defendant's contention that plaintiff Secretary has not established the basis of jurisdiction in this Court."A party moving for summary judgment bears the burden of showing that there is no genuine issue as to all the material facts necessary to entitle him to judgment. 6 J. Moore, Federal Practice p 56.15. But if each element essential to the success of that motion is supported by affidavits or other appropriate papers, the adverse party may not sit idle.
 
 
 40
 "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e) Fed.R.Civ.P.
 
 
 41
 If, however, the moving party's showing is insufficient, no defense is required. See, e.g., Adickes v. Kress & Co., 398 U.S. 144, 161, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142 (1970) (quoting 6 J. Moore, Federal Practice p 56.22, at 2824-2825); Rule 56(e), Notes of Advisory Committee on 1963 Amendment ("Where the evidentiary matter in support of the motion does not establish the absence of a genuine issue summary judgment must be denied even if no opposing evidentiary matter is presented.").
 
 
 42
 The question before us is whether the Secretary's allegation of enterprise coverage under the Act is sufficiently supported by appellants' admission of gross volume sales over $250,000 to shift to appellants the burden of coming forward with evidence that, due to the exclusion in the statutory parenthetical for excise taxes, coverage has not been established. Technically, the Secretary's allegation is insufficiently supported. We are doubtful on the record, however, that a genuine issue of material fact remains making summary judgment inappropriate[4], and are loath to create unnecessary delay and expenditure of judicial resources. "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." Conley v. Gibson, 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957).
 
 
 43
 We will therefore retain jurisdiction and remand to the district court for the limited purpose of making findings of fact as to enterprise coverage. Appellants having admitted an annual sales volume exceeding the statutory amount, the burden shall be on them to demonstrate expeditiously that there is nonetheless a genuine issue of fact as to enterprise coverage under §§ 203(s), 206 and 207. The court may also accept any further offer of proof from the Secretary and allow, in its discretion, discovery conducted by the Secretary for this limited purpose. The court shall then make a finding of fact and report it to us along with the papers supporting that finding. It is of course to be hoped that this issue may be resolved without a hearing.
 
 III. Managerial Employees
 
 44
 Finally, we review the Secretary's contention that appellants are also liable under the FLSA for failure to pay minimum wages to eight managerial employees. Section 13(a)(1) of the FLSA, 29 U.S.C. § 213(a)(1), exempts from coverage "any employee engaged in a bona fide executive, administrative, or professional capacity." The parties stipulated that eight named managerial employees were exempt under the provision "except to the extent, if any, that their failure to be paid subsequent to January 10, 1981 may have affected their exempt status."In arguing that employees' exempt status terminated through nonpayment the Secretary relies on 29 C.F.R. 541.1(f), which requires that in order to be exempt as an executive an employee must, inter alia, be "compensated for his services on a salary basis at a rate not less than $155 per week." The Secretary cites no precedent, however, for applying that regulation to protect under the FLSA previously exempt employees whose contractual salaries are not paid.
 
 
 45
 The Secretary's reliance on Tripp v. May, 189 F.2d 198 (7th Cir.1951), is misplaced. The court there held that an employee who performed work of the type specified in the regulations and who received at least the required minimum salary or considerably more in most pay periods was nevertheless not exempt because his salary was less than the required minimum during two pay periods and because his contract did not guarantee him the required salary for all his work assignments. Id. at 201-02. But there is no question that the employees here were guaranteed by contract a "rate [of salary] not less than $155 per week." That contractual obligation was simply not met during the final two to three weeks of the company's operation.
 
 
 46
 The FLSA was enacted by Congress to remedy "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well being of workers", 29 U.S.C. § 202, by eliminating "low wages and long hours". Rutherford Food Corp. v. McComb, supra, 331 U.S. at 727, 67 S.Ct. at 1475. We find no basis for holding that Congress intended to extend the minimum wage protections of the Act to highly salaried employees whenever their employment contracts are breached.
 
 
 47
 We retain jurisdiction and remand to the district court for the limited purpose of making findings of fact as to enterprise coverage in accordance with the opinion filed this day.
 
 
 
 *
 Of the District of Rhode Island, sitting by designation
 
 
 [1]
 Agnew and Bradley are appellants in action No. 83-1102, dealt with in parts I & II of the opinion, and appellees in action No. 83-1133, dealt with in Part III of the opinion. For convenience we shall refer to them as appellants throughout
 
 
 [2]
 Appellants contend on appeal that there is no evidence that they were sole owners or directors of Maxim, Inc. as implied by the Secretary in his brief. They do not dispute that they had a significant ownership interest in the corporation or that they were directors of the corporation. Our holding in no way rests on the assumptions that they had a complete ownership interest and were sole directors, and we therefore find no disputed material fact with regard to ownership or directorship of the corporation which would make summary judgment inappropriate
 
 
 [3]
 Appellants also argue by way of analogy to the Labor-Management Relations Act, 29 U.S.C. § 186, which incorporates the NLRA's definition of "employer", and to the Federal Employers' Liability Act, 45 U.S.C. § 57, whose provisions are less analogous
 
 
 [4]
 On appeal the Secretary points to several items in the record tending to show that Maxim's sales volume must have exceeded $250,000 even after deduction of any state or federal excise taxes: a cash flow plan indicating that the company's business was expected to exceed $288,000 during a seven-week period; the fact that the company sold aerial ladder fire trucks for about $50,000 each; the company's anticipation of making six or seven deliveries of fire equipment each month. Though these items add to our doubt that any genuine issue remains as to coverage under the FLSA, in themselves they are purely speculative and do not evidence actual sales. As appellees responded at oral argument, had such projections been fulfilled, the company presumably would not have gone bankrupt