**In re BAKER FENCE, INC., Debtor.**

**Bankruptcy No. 83–0166.**

United States Bankruptcy Court,
D. Massachusetts.

March 11, 1985.

Paul F. Kelly, Mary T. Sullivan, Segal, Roitman & Coleman, Boston, Mass., for Massachusetts Laborers' Benefit Funds.

Leonard M. Salter, Wasserman, Salter & Rome, Boston, Mass., for debtor.

## MEMORANDUM ON DEBTOR'S OBJECTION TO CLAIM OF THE MASSACHUSETTS LABORERS BENEFIT FUND

HAROLD LAVIEN, Bankruptcy Judge.

The Massachusetts Laborers Benefit Fund ("MLBF") seeks to have its claim allowed against this debtor, Baker Fence, Inc., based on various theories that this debtor's liability should include claims previously made against two sister corporations. MLBF's claim asserts that its

[c]laim is for fringe benefit contributions due to creditor funds. Three affiliated entities constitute the "employer" for purposes of the Employee Retirement Income Security Act (ERISA). These are Baker Fence, Inc. (No. 83–1166–HL), Hofmeister Equipment Co. (No. 83–1495–JG), and Edward J. Baker Co. (No. 83–1482–JG). The secured portion of the claim is $25,672.14. The priority portion of the claim is $4,944.45. The unsecured portion of the claim is $15,976.81.

Obviously, there is no secured portion of any claim against this debtor and, to the extent that there is a secured claim, it probably need not be further considered in this case. Certainly, any determination of a priority claim that, also, would refer to another case except for a very small portion of the claim. Any transferred liability could only be an unsecured claim in this case. It is difficult to really be sure of exactly what is being asserted in this claim, as filed. Nonetheless, I cannot simply dispose of the claim on that basis, since the Union has filed enough papers for us to be satisfied that, however inarticulate, it is making a claim against this debtor for all or some part of its claim against the two sister corporations. The debtor objected; it contended that the MLBF claims were against entities other than the debtor in this proceeding and, therefore, should be disallowed. Hearing on this matter took place on December 11, 1984. The respective parties were provided the opportunity to file post trial briefs and reply briefs. After review of the parties' memoranda, the evidence presented, and the applicable law, I find and rule as follows.

Although the debtor used the words "inextricably mingled" in describing the debtor's connection with that of Edward J. Baker Co., Inc. and Hofmeister Equipment Co.,[1] the principal of the debtor's full testimony clearly reveals that he did not use those words, as we might legally understand them, as words of art where under such cases as, *My Bread Baking Co. v. Cumberland Farms, Inc.*, 353 Mass. 614, 619, 233 N.E.2d 748 (1968) ("a *confused* intermingling of activity" necessitates ignoring the corporate fiction). [emphasis added]. The testimony was of separate books, many different creditors, both shared and different employees, some similar but largely dissimilar functions, and at least something of a difference in stockholders. Counsel for the MLBF conceded in court that "I'm not sure we're making a factual argument that, you know, Baker Fence was masquerading in the late seventies as Edward J. Baker."

The Edward J. Baker Co., Inc. was established in 1933 for the purpose of performing public contracts for the construction of state highways and town roads throughout New England. Since 1958, 55% of the corporate stock has been owned by Edward J. Baker, Sr., 15% by Edward J. Baker, Jr., 15% by Raymond F. Baker, and 15% by Merritt T. Baker.[2] The debtor, Baker Fence, Inc., was incorporated in 1971 and constructs residential and commercial fencing (including guardrail, chain link and

---

1. This was so stated in the debtor's fourth amended disclosure statement as well as at trial. *See* transcript p. 27.

2. Edward J. Baker, Jr., Raymond F. Baker, & Merritt T. Baker are the children of Edward J. Baker, Sr.

wooden fencing) in Massachusetts as well as New England. All of the debtor's common stock is owned by Edward J. Baker, Jr. Hofmeister Equipment Co. was established in 1969 for the purpose of leasing equipment, equipment that was primarily used by Edward J. Baker, Co., Inc., and later by the debtor. The common stock of Hofmeister Equipment Co. is owned by Edward J. Baker, Jr. (40%), Otto Hofmeister (40%)[3], and Edward J. Baker, Sr., (20%). Edward J. Baker, Jr., is the president of all three corporations as well as the treasurer of Hofmeister Equipment Co. and Edward J. Baker Co. Edward J. Baker, Jr. was also the chief operating officer of all three corporations.

Also testifying at trial was James Nemeth, an administrator with the Massachusetts Laborers Health and Welfare Pension Fund. His testimony merely established that in February, 1980, Edward J. Baker Co., Inc. entered into a settlement agreement whereby it agreed to pay the MLBF $29,500 as a result of accumulated defaults in payment to the MLBF. However, this settlement highlights the Union problem since it relates only to Edward J. Baker Co., Inc., and not to this debtor nor any individuals, although the debtor was an existing corporation at that time and the interests of Edward J. Baker, Jr. was a matter of public record at all times.

If the Court were to decide merely upon the testimony presented at trial, it would be a simple task to find on behalf of the debtor. Only the MLBF and Edward J. Baker Co., Inc. were parties to the settlement, and by all accounts the testimony of the witnesses before the Court established the debtor as a distinct and separate entity organized for the business purpose of performing on contracts where Union help was not required.

Counsel for the MLBF, however, utilizing documents admitted as evidence and other pleadings (both before this Court and other courts) has been able to portray certain inaccuracies in Edward J. Baker, Jr.'s testimony. First, it has raised a question of when the Edward J. Baker Co., Inc. actually ceased its operation and whether or not the debtor completed or performed some of the same public contract work as Edward J. Baker Co., Inc. Further, and most curiously, both the debtor and Hofmeister Equipment Co. filed reports with the Union documenting the hours of Union employees, reports that were curiously duplicated in several respects of Union employees working for the Edward J. Baker Co., Inc., at a time when the latter had, assumedly, ceased operations.

It would appear that the Union is implying that the debtor is in violation of "fairplay"—that Edward J. Baker Co., Inc. utilized Baker Fence Co. to avoid the settlement and its implications. Indeed, the Court finds, and the debtor admits it has been used, in part, to avoid any use of Union employees where not required by statute, regulation, or a union job; however, the debtor's actions were not calculated to deprive such Union employees (as the Union allowed it to employ) of their full benefits. In fact, the debtor tried to make full benefit payments to the Union and still acknowledges in its plan a willingness to pay the Union the amounts that would be due the Union for the Union employees it actually employed.

■ At trial, the MBLF conceded that the proof adduced was insufficient for ignoring the traditional corporate fiction. Instead, it has argued that under section 3(5) of ERISA, 29 U.S.C. § 1002(5), "the term 'employer' means any person acting directly or indirectly in the interest of an employee benefit plan." Judge Mazzone, in *Massachusetts State Carpenters Pension Fund v. Atlantic Diving Co.*, ("*Atlantic*") No. 83–2872 (D.Mass. October 12, 1984), has set forth the applicable standard in order to look beyond the corporate form to collect delinquent payments under ERISA. After a thorough discussion and comparison of the ERISA statute and comparable Fair Labor Standards Act's (FLSA) definitions, the Court found itself guided by the

---

**3.** Otto Hofmeister is the son-in-law of Edward J. Baker, Sr.

First Circuit's disposition of *Donovan v. Agnew*, 712 F.2d 1509 (1st Cir.1983):

In *Donovan v. Agnew*, the First Circuit did not endorse a sweeping or overly expansive interpretation of the term "employer" under FLSA. 712 F.2d at 1513. Rather, the court looked to the facts of the case and the "economic reality" of the situation. *Id.* at 1514. This approach was first articulated by the United States Supreme Court. *Id.* at 1513 *citing Goldberg v. Whitaker House Coop.*, 366 U.S. 28, 33 [81 S.Ct. 933, 936, 6 L.Ed.2d 100] (1961) and *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 728–29 [67 S.Ct. 1473, 1475–76, 91 L.Ed. 1772] (1947). Applying the "economic reality" approach, the First Circuit disregarded the corporate form of the bankrupt business in *Donovan* and imposed personal liability for wage obligations upon two individuals under FLSA. According to the court, two "corporate officers with a significant ownership interest and who had operational control of significant aspects of the corporation's day to day functions, including the compensation of employees, and who personally made decisions to continue operations despite financial adversity during the period of non-payment" were "employers" within the meaning of FLSA. 712 F.2d at 1514.

.   .   .   .   .

I am aware *Donovan v. Agnew* represents a "narrow" holding. 712 F.2d at 1514. I share the First Circuit's concern that "it should not be lightly inferred that Congress intended to disregard in this context the shield from personal liability which is one of the major purposes of doing business in the corporate form." *Id.* at 1513. Nevertheless, in *Donovan* the First Circuit concluded that this does not mean "officers in a bona fide corporation can never be held liable for unpaid wages." *Id.* Thus, employers do not expect an absolute shield from liability for unpaid wages under the FLSA. They should expect similar protection and equal liability for unpaid pension contributions under ERISA.

*Atlantic, supra,* at pp. 10–11. *See also, Alman, Trustee v. Frank's Sportswear Co.*, No. 84–2042–S (D.Mass. January 30, 1985). *Atlantic* dealt with individual officer responsibility rather than sister corporation liability which is at least one step further removed; however, the situations at least share a comparable thread, and, accordingly, I adopt the "economic reality" test for the case at bar.

In determining whether the employees of Baker Fence, Inc. were, in economic reality, the employees of Edward J. Baker, Co., Inc., I find that the MLBF has failed to meet its burden of proof. The duplicative time reports are not enough for the Court to find that as an economic reality, all of the other corporation's employees were really employees of the debtor. There was no evidence that they were paid by the debtor when not working for the debtor or paid by the debtor when working for others except, possibly, for the few duplications. Although the exact date may be in doubt, the Court has no doubt that Edward J. Baker Co., Inc., ceased to exist after 1980. Although the debtor may have been utilized to take advantage of certain contracts that Edward J. Baker Co., Inc. could have performed, there is nothing legally or economically wrong about that. Moreover, the settlement agreement makes no mention of any other entity other than Edward J. Baker Co., Inc. and there has been no evidence that the other companies were unknowns or that any attempt was made to conceal or mislead the Union; in fact, the duplicate reports fully disclose the debtor's use of Union employees. Counsel for the Union admits there was insufficient evidence of alter ego, nor was there any showing of any fraudulent misappropriation of the assets of another corporation to avoid the payment of any past obligation to the Union. At best, the debtor was utilized to minimize *future* liability to the Union. Finally, the Court notes that the debtor may have filed employee hourly reports with the MLBF when it had no labor contract with the MLBF. However, I find that

this was only a good faith attempt by the debtor to pay those workers that which would be needed in attempting to maintain reasonable relations with its Union employees and their income; that is, their salaries plus any benefits they would be entitled to as Union employees. It should be noted that the debtor does not dispute that these payments on behalf of Union employees it actually employed should in equity and good conscience be paid. It is the Union who, at an earlier hearing in this case, contended that the Union did not have any contract or liability with this debtor, and it was the Union that refused the debtor's payment.

 In its brief, the MLBF argues that, alternatively, the FLSA standard of liability also applies to create liability in the debtor. That standard, however, is the same as the ERISA standard, *Atlantic, supra*, and the Court has not found sufficient grounds under that test. Moreover, those cases cited by the MLBF are clearly distinguishable. They, primarily, deal with related companies that utilized employees in such a manner that their individual work week amounted to more than 40 hours, although no one employee worked for more than 40 hours with one of the related companies. This, technically, avoided overtime liability. The courts, in those cases, found the related companies one for purposes of overtime liability. *See Writz v. Pappas Industries, Inc.*, 16 WH Cases 792 (S.D. Texas 1965); *Shultz v. Federal Construction Co.*, 19 WH Cases 26 (N.D.Okla.1969); *Wirtz v. Marymax Construction Co.*, 17 WH Cases 336 (D.C.N.Mex.1966). Here, the debtor does not dispute that it owes payment for benefits for the Union employees that actually work for it.

■ Finally, the MLBF argues that the settlement agreement binds the debtor as well as Edward J. Baker Co., Inc. However, as noted several times above, the

settlement agreement makes no mention of Baker Fence, Inc. The MLBF knew, or should have known, of the debtor corporation which was then in existence but, further, any corporation could have been formed after the settlement agreement was entered without violating any terms of that agreement, which does not talk of successor or assigns. Absent proof of fraud or the traditional grounds for piercing the corporate veil, on the evidence and law presented, the Union has not carried its burden of proof. I do not find the debtor liable for the settlement agreement or any of the past due obligations of Edward J. Baker Co., Inc., or Hofmeister Equipment Co. Based on the Union employees actually employed by the debtor,[4] the Union has an unsecured claim for $1,707.98, a priority § 507(a)(4) claim of $960.35, and an administrative claim of $1,002.35.

---

4. At trial, the Court noted some $2,668.27 prepetition debt owing to the MLBF. Each party was provided the opportunity to rebut that amount in their brief (transcript p. 60). Neither party addressed that amount in their briefs, although the debtor admitted an additional $1,002.35 in priority post-petition expense in its brief. Accordingly, I find $2,668.27 as a unsecured expense ($1,707.98 as general unsecured, $960.35 as a § 507(a)(4) priority), and $1,002.35 as an administrative expense.