**Detmar FINKE, Plaintiff and Counter–Defendant,**

v.

**KIRTLAND COMMUNITY COLLEGE BOARD OF TRUSTEES and Kirtland Community College, Defendants, Counter–Plaintiffs and Third–Party Plaintiffs,**

v.

**Richard Silverman, Third–Party Defendant.**

**No. 04–10102–BC.**

United States District Court,
E.D. Michigan,
Northern Division.

Feb. 23, 2005.

Jeffrey S. Donahue, White, Schneider, Okemos, MI, for Plaintiff.

Raymond M. Davis, Thrun, Maatsch, Lansing, MI, for Defendants.

Mary Anne M. Helveston, Helveston & Helveston, Detroit, MI, for Third–Party Defendant.

## OPINION AND ORDER GRANTING THIRD–PARTY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

LAWSON, District Judge.

The plaintiff, Detmar Finke, has filed a complaint in this Court alleging that during his tenure of employment with defendant Kirtland Community College, Finke was not paid premium wages for overtime work as required by the Fair Labor Standards Act (FLSA), 29 U.S.C. § 203 *et seq.* Finke apparently was hired to the position by Richard Silverman, a high-level administrator who performed the function of the college's president, and who, it is alleged, supervised Finke, controlled his hours, and prescribed his duties. It appears that Kirtland suspects improper dealings between Finke and Silverman with respect to hiring and compensation; Kirtland and its Board of Trustees have filed a counterclaim against the plaintiff and a third-party complaint against Silverman. In the third-party complaint, the third-party plaintiffs seek contribution or indemnity from Silverman for any damages awarded to Finke under the FLSA based on several theories. Silverman has filed a motion to dismiss the third-party complaint contending that he is not an "employer" within the terms of the FLSA, and that legislation does not allow third-party actions for indemnity or contribution. The Court heard the parties' arguments in open court on February 8, 2005, and, treating the motion as one for summary judgment under Federal Rule of Civil Procedure 56(c), now concludes that the FLSA's broad definition of "employer" could include Silverman within its scope. However, the Court believes that the FLSA provides no right of contribution to employers named as defendants in FLSA damage actions, and the Court declines to entertain claims against Silverman under the third-party plaintiffs' novel state law theories. *See* 28 U.S.C. § 1367(c)(3). Therefore, the Court will grant the motion and dismiss the third-party complaint.

### I.

In his principal complaint, Detmar Finke alleges that he was employed as an "internet coordinator" and that he was required to work and regularly did work in excess of forty hours per week during his employment with Kirtland Community College. As a result, Finke contends, he is entitled to overtime compensation at a rate of one and one-half times his hourly wages under 29 U.S.C. § 207(a)(1). Although Finke does not specify the length of his

tenure at Kirtland, the third-party plaintiffs state that Finke was hired in 1999. Third Pty Reply Br. Ex. A, Rorie Decl. at ¶ 3.

On September 7, 2004, Kirtland and its Board filed a third-party complaint against Richard Silverman. Count one of the third-party complaint alleges a right to indemnification from Silverman under the FLSA or the common law for any damages owed Finke. Count two alleges that Silverman breached his contract with Kirtland by disobeying the instructions of his superiors with respect to managing instructional support services, which, presumably, included hiring and managing the plaintiff. Finally, count three alleges that Silverman breached his fiduciary duty to Kirtland when he authorized Finke's improper work and payment.

On November 4, 2004, the third-party defendant filed an amended motion to dismiss and for a more definite statement pursuant to Federal Rules of Civil Procedure 12(b) and 12(e). The Court denied the motion for more definite statement for lack of merit at the case management conference held after oral argument of the motion on February 8, 2005. Although the third-party defendant professes to bring his motion to dismiss under Rule 12(b)(6), both sides have filed declarations in support of their respective positions. These declarations present conflicting versions of the facts.

The declaration of Charles D. Rorie, Kirtland's president, avers that Silverman hired Detmar Finke in 1999 to perform "computer related functions." Rorie Decl. ¶ 3. According to Rorie, Silverman at that time was the college's most influential administrator because of the then president's serious health problems, and he served as interim president of the college. Rorie also alleged that Silverman previously had been employed as an adjunct employee,

but the college did not renew his contract for "among other things, failing to keep a log of his work and failing to obtain prior approval for College related purchases." *Id.* at ¶ 4.

Rorie contends that Silverman alone hired Detmar Finke and did so in a manner inconsistent with college policy and applicable law, because he "never posted the job opening, never conducted formal interviewing or hiring process, never obtained a memorandum of hiring approval from the college president and never sought board approval for Mr. Finke's hiring." *Ibid.* Silverman also failed to submit a formal job title or job description to the human resources department until well after the fact, but apparently the description listed tasks that were either irrelevant or being performed by other individuals.

Rorie also contends that Silverman "controlled and supervised Finke's actions and looked after and protected Mr. Finke" during his tenure there, *ibid.*, and maintains that Finke worked as part of a special project for Silverman, the details of which are unclear. *Id.* at ¶ 5. However, Rorie states that Silverman exercised "substantial control over Detmar Finke's employment terms and working conditions and was responsible for his hiring," such as permitting Finke to work from home without a listed phone number, record of work completed, or supervision. *Id.* at ¶ 6. Rorie swears that Silverman set Finke's pay, approved time sheets, and allowed Finke to collect unauthorized special project pay after Finke was discharged, in violation of college policy. It is Kirtland's position that Finke was discharged because he refused to work at the college facility instead of from home, and he is now retaliating against the college based on the time sheets approved by Silverman.

Silverman has filed his own declaration in which he states that he was employed

by Kirtland for the past twenty years in two principal capacities: vice president for instructional and educational services and dean of instruction. On October 31, 2003, Silverman was reassigned to the position of vice-president for research and program evaluation. Before then, however, Silverman says that he was "the chief academic administrator and was responsible for the day-to-day operation of the instructional activities of the college." Silverman Decl. at ¶ 3. He reported to the college president.

In all his capacities, Silverman insists, he could "recommend, but not ultimately determine, instructional employees' compensation, including Detmar Finke's compensation." *Id.* at ¶ 5. One exception was special projects, in which he "had the discretion to pay people for special projects out of line items in the operational budget that the Board of Trustees had approved and that I administered." *Ibid.* Silverman says that the human resource department has set wages for employees including Finke except for special projects. Silverman acknowledges that he could recommend compensation, and he could recommend that someone be hired or fired, but he contends that he did not possess final authority over such decisions; that authority, he claims, rests with the Kirtland Community College Board of Trustees and more recently the president of the college. Silverman admitted that he signed some of Finke's payroll authorizations, but the final approval came from the business office, over which Silverman says he had no authority.

Silverman argues in his motion that his version of the facts is the correct one and that he cannot be considered an "employer" of Finke under the FLSA. The third-party plaintiffs respond that they have pleaded a valid third-party claim by which they should be able to recover from Silverman under at least one of their theories any damages they might be ordered to pay Finke under the FLSA.

## II.

The purpose of a motion under Rule 12(b)(6) is to test the legal sufficiency of the complaint, not the probability of success on the merits. *Ecclesiastical Order of the Ism of Am, Inc., v. Chasin,* 653 F.Supp. 1200, 1205 (E.D.Mich.1986). In considering a motion to dismiss under Rule 12(b)(6), the allegations in the complaint are taken as true and are viewed in the light most favorable to the non-moving party. *Herrada v. City of Detroit,* 275 F.3d 553, 556 (6th Cir.2001). The Court may consider only whether the allegations contained in the complaint state a claim for which relief can be granted. *Roth Steel Prods. v. Sharon Steel Corp.,* 705 F.2d 134, 155 (6th Cir.1983). The motion may be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Buchanan v. Apfel,* 249 F.3d 485, 488 (6th Cir.2001) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). However, "the complaint is not to be dismissed because the plaintiff has misconceived the proper theory of the claim, if he is entitled to any relief under any theory." *Myers v. United States,* 636 F.2d 166, 169 (6th Cir.1981).

If matters outside the pleadings must be considered in ruling on the merits of the claim, as here, the motion more properly should follow the standards and procedures of Rule 56, and reviewing courts generally will treat the motion as one for summary judgment. *Michigan Paytel Joint Venture v. City of Detroit,* 287 F.3d 527, 533 (6th Cir.2002) (quoting *Soper v. Hoben,* 195 F.3d 845, 850 (6th Cir.1999)). Both parties have made liberal and frequent references in their motion

briefs and at oral argument to their respective declarations. Although the third-party defendant suggested that Silverman's declaration somehow should be considered a "pleading," and therefore the motion should proceed under Rule 12, there is no support for that position. *See* Fed.R.Civ.P. 7(a) (designating as pleadings only complaints, answers, replies to counterclaims, answers to cross claims, third-party complaints, and court-ordered replies to answers or third-party answers). The Court believes, therefore, that the third-party defendant's motion ought to be adjudicated as a motion for summary judgment.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The parties have filed cross motions for summary judgment, and neither suggests that there are facts in dispute. Nonetheless, the Court must apply the well-recognized standards when deciding cross motions; "[t]he fact that the parties have filed cross-motions for summary judgment does not mean, of course, that summary judgment for one side or the other is necessarily appropriate." *Parks v. LaFace Records,* 329 F.3d 437, 444 (6th Cir.2003). Thus, when this Court evaluates cross motions for summary judgment, it "must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Westfield Ins. Co. v. Tech Dry, Inc.,* 336 F.3d 503, 506–07 (6th Cir.2003).

A motion for summary judgment under Fed.R.Civ.P. 56 presumes the absence of a genuine issue of material fact for trial. The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quotation and citation omitted).

A.

■ Third-party defendant Silverman argues that he cannot be held liable for contribution or indemnity to Kirtland College because he is not jointly liable for premium wages to Finke under the FLSA as Finke's employer or co-employer. Silverman reasons that since he himself was only an employee of Kirtland College, and he had no ownership interest or operational control of the entire enterprise, he was merely an agent of a disclosed principal. Therefore, he concludes, even if he had supervisory authority over Finke and recommended that he be hired, he cannot be considered Finke's employer because it was Kirtland College that hired Finke, paid his wages, and is the only entity that "employed" him.

Silverman's argument makes sense under traditional agency law. The Sixth Circuit has recognized that " '[u]nless otherwise agreed, a person making or purporting to make a contract with another as agent for a disclosed principal does not become a party to the contract.' " *Andersons, Inc. v. Horton Farms, Inc.,* 166 F.3d 308, 315 (6th Cir.1998) (quoting 2 Restatement Agency, 2d, § 320), as cited in *Riddle v. Lacey & Jones,* 135 Mich.App. 241, 351 N.W.2d 916, 919 (1984); *see also*

*Soberay Mach. & Equipment Co. v. MRF Ltd., Inc.,* 181 F.3d 759, 767–68 (6th Cir. 1999) (applying Ohio law and holding "that '[a]n agent who acts for a disclosed principal and who acts within the scope of his authority and in the name of the principal is ordinarily not liable on the contracts he makes' because the third party intended to deal with the principal, not the agent"); *Summit Petroleum Corp. of Indiana v. Ingersoll–Rand Financial Corp.,* 909 F.2d 862, 868 (6th Cir.1990) (same, applying Kentucky law). Likewise, under Title VII of the Civil Rights Act of 1964, "an individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII." *Wathen v. General Elec. Co.,* 115 F.3d 400, 405 (6th Cir.1997); *see also Burlington Industries v. Ellerth,* 524 U.S. 742, 754, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) (observing that "Congress has directed federal courts to interpret Title VII based on agency principles").

However, Section 203(d) of the Fair Labor Standards Act as codified in Title 29 broadly defines "employer" to mean "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The Supreme Court has held that the term is to be construed expansively to fulfill the remedial goals of the Act, and therefore the FLSA contemplates that more than one employer may be responsible for violations under the Act. *See Falk v. Brennan,* 414 U.S. 190, 195, 94 S.Ct. 427, 38 L.Ed.2d 406 (1973). Likewise, the Sixth Circuit has held that "[t]he remedial purposes of the FLSA require courts to define 'employer' more broadly than the term would be interpreted in traditional common law applications." *Dole v. Elliott Travel & Tours,* 942 F.2d 962, 965 (6th Cir.1991) (internal quotes and citations omitted).

In *Dole,* the court set forth an "economic realities" test to determine whether a supervisor may be considered an "employer" under the FLSA. *Id.* at 965 (holding that "in deciding whether a party is an employer, economic reality controls rather than common law concepts of agency"). The main focus of the inquiry is whether the supervisor exercises "substantial control of the terms and conditions of the work of [the] employee." *Falk,* 414 U.S. at 195, 94 S.Ct. 427. The court of appeals explained:

'The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages.' *Donovan v. Agnew,* 712 F.2d 1509, 1511 (1st Cir.1983). In *Agnew,* the court determined that 'corporate officers with a significant ownership interest who had operational control of significant aspects of the corporation's day to day functions, including compensation of employees, and who personally made decisions to continue operations despite financial adversity during the period of non-payment' were employers under the FLSA. *Id.* at 1514. 'No one factor is dispositive; rather, it is incumbent upon the courts to transcend traditional concepts of the employer-employee relationship and assess the economic realities presented by the facts of each case.'

*Dole,* 942 F.2d at 965 (citation omitted).

Silverman's argument that he cannot be an "employer" because he had no ownership interest in the college misses the point of the economic realities test. Ownership is not an element that must be satisfied but rather a factor to be weighed in the totality of the circumstances. In fact, in *Agnew,* cited by the Sixth Circuit in *Dole,* the court rejected a similar argument and held that even a corporate offi-

cer who lacks an ownership interest may be an employer under the FLSA. *Donovan v. Agnew,* 712 F.2d 1509, 1511 (1st Cir. 1983). In *Bergstrom v. Univ. of New Hampshire,* 943 F.Supp. 130, 135 (D.N.H. 1996), the court applied the definitional language under the FLSA and held that a supervisor in a university setting was an employer under the Equal Pay Act.

In this case, the third-party plaintiffs have alleged that Silverman, in his capacity as *de facto* president of the college, hired Finke, supervised his work, set his wages, prescribed the conditions of his employment, authorized him to work on special projects off site, and approved his time sheets. The Court is satisfied that Silverman can be found to have exercised substantial control of the terms and conditions of Finke's work. Under the totality of the circumstances, Silverman can be considered to be a co-employer within the meaning of 29 U.S.C. § 203(d). Had Finke sued Silverman directly, Silverman could be found liable to Finke under the FLSA.

### B.

■ However, Finke did not name Silverman as an employer or co-employer and seeks no damages from him. The question that remains, therefore, is whether Kirtland and its Board can obtain contribution or indemnity from Silverman in their third-party action against him. The Sixth Circuit has not addressed that issue, but the Second Circuit has held that Congress has not provided a right of action for contribution or indemnity in the FLSA in favor of an employer against a co-employer. *Herman v. RSR Sec. Services,* 172 F.3d 132 (2d Cir.1999). This Court is persuaded by the reasoning in that case, which is based on the Supreme Court's holding in *Northwest Airlines, Inc. v. Transport Workers Union,* 451 U.S. 77, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981), that

no action for contribution is allowed under the Equal Pay Act or Title VII of the Civil Rights Act.

*Herman* involved a claim by a co-employer—a one-half shareholder of the corporate employer also found liable for FLSA violations—for contribution against another shareholder and supervisor for damages found owing under the FLSA. Although *Northwest Airlines* did not involve a contribution claim against a co-employer, the *Herman* court took guidance from that decision because similar tenets of statutory construction were involved. In *Northwest Airlines,* the Supreme Court stated that the absence of specific authorizing language would not preclude a contribution action against the employee union in that case if the statutes under examination—the Equal Pay Act and Title VII—were "enacted for the special benefit of a class of which petitioner is a member." *Northwest Airlines,* 451 U.S. at 92, 101 S.Ct. 1571. However, the Supreme Court found that both those statutes were enacted for the benefit of employees, employers were not members of the class designated for protection, the comprehensive remedial scheme suggested that Congress intended no additional remedies, and the legislative history of both statutes was silent on the question of contribution. Therefore, no claim for contribution was recognized. *Id.* at 92–94, 101 S.Ct. 1571. Following the direction of *Northwest Airlines,* the Second Circuit was led to the same result under the FLSA. The court explained:

First, the text of the FLSA makes no provision for contribution or indemnification. Second, the statute was designed to regulate the conduct of employers for the benefit of employees, and it cannot therefore be said that employers are members of the class for whose benefit the FLSA was enacted. Third,

the FLSA has a comprehensive remedial scheme as shown by the 'express provision for private enforcement in certain carefully defined circumstances.' *Northwest*, 451 U.S. at 93, 101 S.Ct. 1571. Such a comprehensive statute strongly counsels against judicially engrafting additional remedies. Fourth, the Act's legislative history is silent on a right to contribution or indemnification. *See* Joint Hearings on H.R. 7200 and S. 2475 Before the Senate Comm. on Educ. and Labor and the House Comm. on Labor, 75th Cong. (1937), reprinted in 4 American Landmark Legislation: The Fair Labor Act of 1938, at 37–116 (Irving J. Sloan ed., 2d series, 1984).... Accordingly, we hold that there is no right to contribution or indemnification for employers held liable under the FLSA. Cases from other circuits support this conclusion. Several have followed *Northwest's* reasoning in similar situations. *See Martin v. Gingerbread House, Inc.*, 977 F.2d 1405, 1408 (10th Cir.1992) ("a third party complaint by an employer seeking indemnity from an employee is preempted" by the FLSA); *Lyle v. Food Lion, Inc.*, 954 F.2d 984, 987 (4th Cir.1992) (court should not "engraft an indemnity action upon this otherwise comprehensive federal statute," i.e., the FLSA)[.]

*Herman*, 172 F.3d at 144.

The third-party plaintiffs, however, argue that there is a split in authority and other courts have found a right of contribution under the FLSA, citing *Maldonado v. Lucca*, 636 F.Supp. 621 (D.N.J.1986), and *Canjura v. Able Serv. Contractors, Inc.*, 866 F.Supp. 258 (D.Md.1994). *Maldonado* provides little support for their position since the court did not directly address the issue of a right of contribution under the FLSA. Rather, the court noted only that two employers named by the employee in a FLSA complaint are subject

to joint and several liability. Although the court mentioned that "the defendants may well have a cause of action for contribution or indemnification" *id.* at 628, the comment was *obitur dictum* and made in passing when the court assessed liquidated damages. There was no third-party complaint in that case, and the statements there were not part of the court's holding.

The decision in *Canjura*, which the third-party plaintiffs read as demonstrating a split of authority, provides even less support. That court squarely rejected the a right to contribution under the FLSA, stating that the "argument that the parties were jointly and severally liable is not persuasive, as the Supreme Court has held that joint and several liability does not imply a right to contribution. *See Texas Industries v. Radcliff Materials*, 451 U.S. 630, 646, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981)." *Canjura*, 866 F.Supp. at 258. Thus, the mere fact that the third-party defendant may well be an employer does not entitle the third-party plaintiffs to contribution.

■ Finally, the third-party plaintiffs contend that even if they cannot recover contribution or indemnity against Silverman under the FLSA, they may have state-law remedies against him based on other theories. In *Herman*, the Second Circuit held that "the FLSA's remedial scheme is sufficiently comprehensive as to preempt state law in this respect." *Herman*, 172 F.3d at 144. However, the third-party plaintiffs cite *Donovan v. Gingerbread House, Inc.*, 536 F.Supp. 627 (D.Co.1982), *rev'd on other grounds by Brock v. Gingerbread House, Inc.* 907 F.2d 115 (10th Cir.1989), in which the district court allowed an employer's third-party action to proceed against former assistant directors alleging that they breached a fiduciary duty by intentionally permitting

**601**

certain employees to work in excess of normal working hours and by making fraudulent entries into the company's work records to reflect time they did not spend working for the defendants. The third-party complaint also sought damages on the basis that the third-party defendants had filed complaints against the third-party plaintiffs with the Department of Labor solely to harass them. The district court determined that the third-party action could proceed under Colorado's common-law cause of action for breach of a corporate officer's fiduciary duty and gross negligence.

In this case, the third-party plaintiffs acknowledged at oral argument that the only damages they seek from Silverman is the amount for which they may be held liable to Finke under the FLSA. No matter the label or the underlying legal theory put forth, the action can only be construed in this light as one for contribution or indemnity, which, the Court determines, is not allowed under the FLSA. Perhaps the third-party plaintiffs believe that its state-law theories may lead to other damages from Silverman. However, the Court need not answer the question today whether such claims may proceed under state law or whether they also may be preempted. To the extent that the third-party complaint may be read to plead such claims, the Court declines to exercise supplemental jurisdiction over them since the main claim for contribution under the FLSA is dismissed. *See* 28 U.S.C. § 1367(c) (stating that a district court may decline to exercise supplemental jurisdiction where "the claim raises a novel or complex issue of State law," "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction," or "the district court has dismissed all claims over which it has original jurisdiction").

### III.

The Court finds that although Silverman could be considered a co-employer of the principal plaintiff, he has not been named as a co-defendant and he may not be impleaded by Kirtland or its Board because no right of contribution or indemnity is recognized under the FLSA.

Accordingly, it is **ORDERED** that the third-party defendant's motion to dismiss [dkt # 36], treated as a motion for summary judgment, is **GRANTED**.

It is further **ORDERED** that the third-party complaint, to the extent that it seeks contribution or indemnity for damages that may be awarded under the Fair Labor Standards Act, is **DISMISSED WITH PREJUDICE,** and to the extent it seeks other damages under state law claims for breach of contract or fiduciary duty, it is **DISMISSED WITHOUT PREJUDICE.**