**MASSACHUSETTS STATE CARPENTERS PENSION FUND, Plaintiff,**

v.

**ATLANTIC DIVING COMPANY, INC., Defendant.**

**Civ. A. No. 83–2872–MA.**

United States District Court, D. Massachusetts.

Oct. 12, 1984.

Robert O. Berger, Flamm & Birmingham, Boston, Mass., for plaintiff.

Keith Long, Herrick & Smith, Boston, Mass., for defendant.

MEMORANDUM AND ORDER

MAZZONE, District Judge.

The plaintiff, Massachusetts State Carpenters Pension Fund (the Fund), has brought an action to collect delinquent contributions from the defendant, Atlantic Diving Company, Inc. (Atlantic). First, the Fund seeks to enforce Atlantic's obligation to contribute to the Fund under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1132(a)(3)(B)(ii), (d)(1) and (f). Second, the Fund maintains Atlantic has breached its contractual obligation to pay into the Fund under a collective bargaining agreement. Therefore, the Fund seeks arrearages under section 301 of the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. § 185.

The plaintiff has filed a motion requesting leave to amend its complaint pursuant to Fed.R.Civ.P. 15. The plaintiff wishes to add "new indispensable parties" as defendants, specifically, the three individual officers of Atlantic. In support of its motion the Fund cites decision in *Ronald Alman, Trustee v. Servall Mfg. Co. and Herman*

*Bank,* No. 82–0746–MA, slip op. (D.Mass April 9, 1984) (*Alman*).

Atlantic opposes leave to amend. Specifically, Atlantic believes the Fund's proposed amendment fails to state a claim upon which relief may be granted. Atlantic argues the *Alman* decision was incorrect in holding a dominant corporate officer-shareholder jointly and severally liable under ERISA for his corporation's delinquent pension fund contributions. In addition, because Atlantic and its parent company have filed a petition under Chapter 11 of the United States Bankruptcy Code, Atlantic seeks to stay this action pending the Bankruptcy Court's disposition.

## I. *The Motion to Amend*

█ As a general principle, leave to amend a complaint should be "freely given." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Atlantic, however, asks this Court to deny leave to amend because the plaintiff's proposed amendment states a claim which is "legally insufficient on [its] face," *citing* C. Wright & A. Miller, 6 *Federal Practice & Procedure* § 1487 (1971). In particular, Atlantic contends the *Alman* decision was "incorrect as a matter of law."

At Atlantic's request, I have reviewed the *Alman* opinion. I have also examined in more detail the issue of individual liability for corporate pension fund contributions. I have had the benefit of extensive memoranda from both sides. After a thorough review, I see no reason to alter the result or reasoning of *Alman.* In my judgment, an individual may be personally liable for pension fund obligations as an "employer" under ERISA.

In *Alman* a trustee fiduciary of two union pension plans brought an action to enforce the employer's contractual obligation to contribute to the plans. The

plaintiff moved for summary judgment on two issues. First, the plaintiff argued Servall Manufacturing Company violated its contractual and ERISA obligations to contribute to the pension plans pursuant to a collective bargaining agreement. Second, according to the plaintiff, Herman Bank, corporate officer and principal shareholder of Servall, was an "employer" within the meaning of section 3(5) of ERISA, 29 U.S.C. § 1002(5) and, therefore, jointly and severally liable for the corporation's delinquent payments. Plaintiff's motion for summary judgment prompted no response and no opposition from the defendants. This Court granted summary judgment on both issues.

In holding Herman Bank an "employer" under section 3(5) of ERISA, 29 U.S.C. § 1002(5), this Court relied primarily on ERISA's definition of "employer" and the facts presented. Bank was the president, chief executive officer, and principal shareholder of Servall. He controlled Servall's entire financial operations as well as other activities. "He acted on behalf of Servall in all matters having to do with benefit plans, including audits, ascertaining contributions and collection arrangement." *Alman* at 2. Consequently, he satisfied ERISA's definition of an "employer" by "acting as an employer, or directly in the interest of an employer, in relation to an employee benefit plan...." As an "employer" under ERISA, therefore, Bank was held liable for unpaid contributions.[1]

In the instant case, the action brought by the Fund is also one to collect an employer's outstanding pension fund payments. The suit is authorized under ERISA, 29 U.S.C. § 1132(a)(3)(B)(ii).[2] Furthermore, because Atlantic allegedly breached a collective bargaining agreement, the action to collect delinquent fund payments is also authorized under section 301 of the LMRA,

---

1. Supporting analysis was drawn from *Donovan v. Agnew,* 712 F.2d 1509 (1st Cir.1983) (Two individual corporate officers held personally liable for wage obligations under FLSA.).

2. *See also* 29 U.S.C. § 1145 ("Any employer who is obligated to make contributions to a multiem-

ployer plan under the terms of a collective bargaining agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.").

29 U.S.C. § 185. If funds are in fact owing, the Fund is entitled to bring an action under both statutes because "trustees have a fiduciary obligation to collect the funds owed in order to pay pensions and other related benefits due employees." *Carpenter's Health & Welfare Fund v. Ambrose,* 727 F.2d 279, 286 (3d Cir.1983).

Apparently, Atlantic recognizes the legitimacy of the Fund's action against the corporation under ERISA and section 301 of the LMRA. Atlantic's opposition is aimed at the extension of this collection action to individual corporate officers. In other words, Atlantic seeks to restrict any possible recovery of delinquent pension fund payments under ERISA and section 301 solely to the corporate defendant: Atlantic Diving Company, Inc. This position does not comport with the view of numerous federal courts, and fails to recognize ERISA's role in the federal statutory scheme governing employment. I turn first to a discussion of the federal courts' pronouncements on corporate and individual liability for pension fund payments.

### A. *Corporate and Individual Liability for Pension Fund Payments*

*Alman* is hardly the first federal court decision to look beyond a defendant's corporate form in an action to collect delinquent pension fund payments under ERISA or section 301. Several courts have displayed a willingness to disregard corporate form and consider imposing liability on "alter ego" corporations as well as individuals. For example, in *Carpenters Local Union No. 1846 v. Pratt-Farnsworth,* 690 F.2d 489 (5th Cir.1982), a union brought an action for pension fund payments against two corporations under section 301 of the LMRA, 29 U.S.C. § 185 and ERISA, 29 U.S.C. § 1132. The Fifth Circuit reversed the district court's dismissal of both claims. 690 F.2d at 537. The appeals court remanded the case for a determination of whether one of the corporations—a nonsignatory to the collective bargaining agreement with the union—was the "alter ego" of the signatory corporation. *Id.* at 524–

525. If so, the district court was instructed to impose liability under section 301. The court also specifically reinstated the union's ERISA claim against the corporations. According to the Fifth Circuit's summary of the ERISA issue:

> We are here concerned with the question whether there has been a breach of contractual duty to provide benefits to Farnsworth's employees. In our view, if the plaintiffs can show that Halmar is a sham, a disguised continuance used by Farnsworth to escape its obligations under the collective bargaining agreement and ERISA, they can succeed in their claims against Halmar.

690 F.2d 489 at 526.

The Fifth Circuit's willingness to extend contractual and ERISA liability beyond a signatory corporation was echoed by the Ninth Circuit in *Operating Engineers Pension Trust v. Reed,* 726 F.2d 513 (9th Cir. 1984). In *Reed,* the district court had held an individual and his newly formed corporation were jointly and severally liable under ERISA, 29 U.S.C. § 1132, for delinquent payments to a union pension fund. The appeals court reviewed the lower court's holding under the established Ninth Circuit standard. According to the circuit court, "[t]he proper standard for determining when an individual will be held personally liable for the trust fund obligations of a corporation controlled by that individual is set forth in *Audit Services, Inc. v. Rolfson,* 641 F.2d 757, 764 (9th Cir.1981)." 726 F.2d at 515. The Ninth Circuit then reiterated the applicable standard:

> An owner of a corportion will be held personally liable for trust fund contributions if (1) there is little or no respect shown to the separate identity of the corporation; (2) recognition of the corporation would result in injustice to the litigants; and (3) there was a fraudulent intent behind the corporation.

*Id. citing Seymour v. Hull & Moreland Eng.,* 605 F.2d 1105, 1111 (9th Cir.1979).

Under the facts presented in *Reed,* however, the appeals court reversed the district court's imposition of joint and several liabil-

ity on the individual. 726 F.2d at 513, 515. Nevertheless, in the appropriate circumstances, the Ninth Circuit appears willing to impose personal liability under ERISA despite the corporate form of a defendant. *See also Carpenter's Health & Welfare Fund v. Ambrose, supra* (Two individual corporate officers personally liable for corporation's delinquent pension fund contributions under state law, liable for plaintiff's attorneys fees, but not personally liable under section 301) and *Trustees of Retirement Fund v. Kahn Bros.,* 550 F.Supp. 35 (S.D.N.Y.1982) (Because the plaintiff seeks personal liability of the defendant corporate officers for delinquent pension funds under a contract theory, court need not reach defendant's argument that there is no basis for personal liability under ERISA).

Most recently in *Greater Kansas City Laborers Pension Fund v. Thummel,* 738 F.2d 926 (8th Cir.1984), the Eighth Circuit upheld a district court's imposition of joint and several liability upon an individual for his corporation's indebtedness to a union pension fund. The court's holding was based on extensive factual evidence that a newly formed corporation was in fact the individual's "alter ego." *Id.* at 929. The court also held the individual liable for attorneys' fees under ERISA, 29 U.S.C. § 1132(g)(2)(D). *Id.* at 930–31.

Given the appropriate circumstances, therefore, federal courts have been willing to depart from a rigid concept of corporate form in pension fund payment cases under both ERISA and section 301 of the LMRA. Accordingly, I do not share Atlantic's view in the present matter that this Court's *Alman* decision is an anomaly. Rather, the outcome in *Alman* appears consistent with that reached by other courts. The imposition of personal liability upon a dominant corporate officer-shareholder is not novel under established ERISA and section 301 jurisprudence. The fact that *Alman* employed an interpretation of ERISA's definition of an "employer," 29 U.S.C. § 1002(5), should not obscure its rather ordinary result.

I turn next to the propriety of regarding certain individuals as "employers" under ERISA given ERISA's role in the federal statutory scheme governing employment.

## B. *ERISA's Role in the Federal Statutory Scheme*

Congress has enacted numerous statutes directed at the plight of working men and women. The list of legislation includes the National Labor Relations Act, 29 U.S.C. §§ 151–169, the Labor Management Relations Act, 29 U.S.C. §§ 141–187, the Social Security Act, 42 U.S.C. §§ 301–1397f, and the Fair Labor Standards Act, 29 U.S.C. §§ 201–219. Each of these statutes addresses a critical issue: the right to organize and bargain collectively; the right to some retirement income; and the right to decent hours and compensation.

The enactment of ERISA in 1974 must be viewed as one of the most recent additions to this comprehensive statutory scheme. This is evident from the statement of congressional policy found in ERISA. After considering the importance of private pension funds, Congress found:

> that the continued well being and security of millions of employees and their dependents are directly affected by these plans; ... that owing to the lack of employee information and adequate safeguards concerning their operation it is desirable in the interest of employees and their beneficiaries ... that disclosure be made and safeguards be provided with respect to the establishment, operation and administration of such plans....

29 U.S.C. § 1001(a). Accordingly, one court has observed that the "prime purpose of [ERISA] is to insure that workers receive the benefits to which they are entitled under private pension plans established for them by their employers." *Pension Benefit Guarantee Corp. v. Ouimet Corp.,* 470 F.Supp. 945, 947 (D.Mass.1979).

This Court has recognized ERISA's place in the federal statutory scheme. In *Alman,* therefore, the reasoning employed by the First Circuit in construing the Fair Labor Standards Act's (FLSA) definition of

"employer" was applied in a similar ERISA context. *See Alman* at 3, *citing Donovan v. Agnew,* 712 F.2d 1509 (1st Cir.1983). In *Donovan v. Agnew,* the First Circuit upheld the imposition of personal liability for unpaid wages on two individuals under the FLSA. The Court imposed liability on the two officers of a bankrupt corporation after finding each individual an "employer" as defined under the FLSA. 712 F.2d 1508, 1514.

In the instant matter, Atlantic argues the First Circuit's construction of the FLSA's definition of "employer" "does not help in interpreting ERISA's definition." Therefore, according to Atlantic "the *Donovan* case should not be seen as authority for extending its narrow principle to ERISA...." I find this argument unpersuasive.

The construction of the FLSA is germane to this Court's review of liability under ERISA for several reasons. First, the congressional findings in both statutes reflect a common policy goal. *Compare* 29 U.S.C. § 1001 with 29 U.S.C. § 202(a).

Second, the language chosen by Congress to define "employer" in both statutes is nearly identical. Under ERISA, "[t]he term 'employer' means any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan." 29 U.S.C. § 1002(5). Similarly, under the FLSA, " '[e]mployer' includes any person acting directly or indirectly in relation to an employee...." 29 U.S.C. § 203(d). The term "person" is defined in ERISA as "an individual, partnership, joint venture, corporation, mutual company...." 29 U.S.C. § 1002(9). The FLSA's definition of "person" corresponds as "an individual, partnership, association, corporation, business trust...." 29 U.S.C. § 203(a).

Third, ERISA and FLSA are closely related because both statutes are focused on the protection of an employee's compensation. Since as early as 1947, pension plans have been recognized as a form of employee compensation. *See Inland Steel Co. v. NLRB,* 170 F.2d 247 (7th Cir.1948), *cert.*

*denied,* 336 U.S. 960, 69 S.Ct. 887, 93 L.Ed. 1112 (1949). This fact did not escape the attention of the framers of ERISA when the statute was first contemplated in 1973. *See* Senate Rep. No. 93–127, 93d Cong., 1st Sess. (1973) 3 *reprinted in* Legislative History of the Employee Retirement Income Security Act of 1974, Vol. I at 589 (1976). Therefore, because of their common goals, shared language and similar purpose, the FLSA and ERISA interrelated. As a result, the First Circuit's view of when an individual is an "employer" under FLSA and hence personally liable for unpaid wages is very relevant to this Court's identical inquiry concerning pension fund payments under ERISA. Thus, when presented with an employer's alleged failure to compensate his employees by contributing to their pension fund, I am guided by the First Circuit's disposition of *Donovan v. Agnew,* 712 F.2d 1509 (1st Cir.1983).

In *Donovan v. Agnew,* the First Circuit did not endorse a sweeping or overly expansive interpretation of the term "employer" under FLSA. 712 F.2d at 1513. Rather, the court looked to the facts of the case and the "economic reality" of the situation. *Id.* at 1514. This approach was first articulated by the United States Supreme Court. *Id.* at 1513 *citing Goldberg v. Whitaker House Coop.,* 366 U.S. 28, 33, 81 S.Ct. 933, 936, 6 L.Ed.2d 100 (1961) and *Rutherford Food Corp. v. McComb,* 331 U.S. 722, 728–29, 67 S.Ct. 1473, 1475–76, 91 L.Ed. 1772 (1947). Applying the "economic reality" approach, the First Circuit disregarded the corporate form of the bankrupt business in *Donovan* and imposed personal liability for wage obligations upon two individuals under FLSA. According to the court, two "corporate officers with a significant ownership interest and who had operational control of significant aspects of the corporation's day to day functions, including the compensation of employees, and who personally made decisions to continue operations despite financial adversity during the period of non-payment" were "employers" within the meaning of FLSA. 712 F.2d at 1514.

*Alman* presented this Court with an analogous situation under ERISA. In that

case, personal liability was imposed on a dominant corporate officer-shareholder integrally involved with a corporation's failure to honor pension fund obligations. Under *Alman*, therefore, an individual may satisfy ERISA's definition of "employer" and be held personally liable in the appropriate circumstances.

I am aware *Donovan v. Agnew* represents a "narrow" holding. 712 F.2d at 1514. I share the First Circuit's concern that "it should not be lightly inferred that Congress intended to disregard in this context the shield from personal liability which is one of the major purposes of doing business in the corporate form." *Id.* at 1513. Nevertheless, in *Donovan* the First Circuit concluded that this does not mean "officers in a bona fide corporation can never be held liable for unpaid wages." *Id.* Thus, employers do not expect an absolute shield from liability for unpaid wages under the FLSA. They should expect similar protection and equal liability for unpaid pension contributions under ERISA.

### C. *Summary*

In the appropriate circumstances, an individual corporate officer may be held liable

under ERISA for delinquent pension fund contributions. Several federal courts have shown a willingness to disregard the corporate form when imposing liability under ERISA and section 301 of the LMRA. Furthermore, an individual may be liable as an "employer" defined in ERISA,[3] as an individual is held liable as an "employer" under FLSA, 29 U.S.C. § 1002(5). I am aware that the United States District Court for the Western District of Pennsylvania has reached a different conclusion on this issue. *See Combs v. Indyk,* 554 F.Supp. 573, 575 (W.D.Pa.1982) (Corporate officers may not be held personally liable as employers under ERISA's definition of "employer."). Nonetheless, I must respectfully disagree.

Finally, in the instant matter I do not now decide whether the individuals named by the plaintiff Fund in its complaint are to be held personally liable as "employers" under ERISA or under section 301. A complete factual basis is needed to support the plaintiff's contention. *See Moyers v. Frank P. Bauer Marble Co.,* 556 F.Supp. 192, 194 (N.D.Ill.1983) (Union's ERISA action to hold an individual corporate officer liable for his corporation's failure to contribute to pension fund under collective bargaining agreement must be based on

---

**3.** The defendants have devoted much of their argument to a construction of Title IV of ERISA, as amended by the Multiemployer Pension Plan Amendment Act of 1980. That Title governs an employer's "withdrawal liability." "Withdrawal liability" is an employer's long term debt to a plan for any unfunded vested benefits attributed to its employees once the employer ceases its participation. 29 U.S.C. § 1381. The Pension Benefit Guarantee Corporation (PBGC), a corporation created under ERISA, 29 U.S.C. § 1302, administers Title IV. If any employer does not pay its liability, PBGC will satisfy the employer's benefit obligations to the fund and lodge a claim against the delinquent employer. 29 U.S.C. § 1368.

I note that withdrawal liability is not an issue in this case. Rather, this is an action to collect delinquent contributions under a collective bargaining agreement and under Title I of ERISA, 29 U.S.C. § 1132. Nevertheless, the defendant Atlantic contends personal liability for "withdrawal liability" will be imposed if individuals are found to be "employers" under ERISA and liable for unpaid fund contributions under Title I. Atlantic believes this is clearly not the case and relies on an opinion letter from PBGC

which states "....ERISA has no special rules regarding shareholder or officer liability." Defendant's Memorandum in Response to Plaintiff's Brief in Reply to Defendant's Opposition to Amend at 5, 7 *quoting* PBGC Opinion Letter 82–038 (Dec. 14, 1982).

Although I do not consider personal liability for withdrawal liability in this action, I note that the PBGC does indeed state that ERISA has no special rules regarding personal liability for "withdrawal liability." Nevertheless, the PBGC does not rule out any personal liability in that area. The letter further states, "this issue is usually determined by state law which generally provides that shareholders are not liable for the debts of a corporation. You should, however, be aware that the laws of every state contain exceptions to this general principle." *Id.* Accordingly, I do not consider the PBGC Opinion letter a compelling reason to foreclose the opportunity for individual liability under ERISA in its entirety. For a discussion of officer/shareholder liability for a corporate pension *contribution obligations* not "withdrawal liability" under state law *see Carpenter's Health & Welfare Fund v. Ambrose,* 727 F.2d 279 (3d Cir.1983).

further factual evidence.). I presently hold only that plaintiff's proposed amendment states a valid claim.

## II. *Defendant's Request to Stay the Action*

Under 11 U.S.C. § 362 any action against the defendant Atlantic Diving Company, Inc. is stayed automatically. I find no reason in law or equity to stay the action against the purportedly solvent individual co-defendants. *See Lynch v. Johns-Manville Sales Corp.*, 710 F.2d 1194, 1196–1200 (6th Cir.1983) for a discussion of the effect of an automatic stay on a co-defendant. Any hardship imposed upon the individual defendants must be viewed together with the hardship imposed upon individual benefit recipients and the Fund which is "entitled to the money contractually due them to meet their statutory and fiduciary obligations to the members of the Union." *Carpenter's Health & Welfare Fund v. Ambrose*, 727 F.2d 279, 286 (3d Cir.1983).

Accordingly, the plaintiff Massachusetts State Carpenters Pension Fund's motion to amend its complaint and add certain individuals as defendants is granted. The action against the defendant Atlantic Diving Company, Inc. is stayed pursuant to 11 U.S.C. § 362.

SO ORDERED.