**MASON TENDERS DISTRICT COUNCIL WELFARE FUND, and Annuity Fund, and Anthony P. Lanza, in his fiduciary capacity as Administrator of the Mason Tenders District Council Welfare Fund, Pension Fund and Annuity Fund, Plaintiffs,**

v.

**Charles F. DALTON and John Lowry, Defendants.**

**No. 86 Civ. 3849 (LBS).**

United States District Court, S.D. New York.

Nov. 24, 1986.

Opinion vacated at parties' request, Feb. 27, 1987, see infra at 1318.

Levin & Weissman, P.C., for plaintiffs; Sara L. Chenetz, Damien E. Mysak, New York City, of counsel.

Platzer & Fineberg, for defendant Dalton; Steven D. Karlin, New York City, of counsel.

Davidson, Dawson & Clark, for defendant Lowry; David S. Elkins, New York City, of counsel.

SAND, District Judge.

This is an action commenced by the Mason Tenders District Council Welfare Fund and Pension Fund and Annuity Fund (referred to collectively as the "Funds"), and Anthony Lanza, in his fiduciary capacity as Administrator of the Funds, against defendant Charles F. Dalton ("Dalton") and John Lowry, Jr. ("Lowry") to collect fringe benefit contributions allegedly past due to the Funds.

This suit has been brought pursuant to sections 502(a)(3) and 515 of the Employment Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1132(a)(3) and 1145, and section 301 of the Labor-Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185. Presently pending before the Court are the defendants' motions to dismiss the complaint as failing to state a claim. These motions

present the issue whether individual corporate officers with authority and control over the payment of fringe benefit contributions to employee benefit plans are personally liable under ERISA for their corporation's breach of a contractual obligation to make benefit plan contributions. For the reasons discussed below, we conclude that under the undisputed facts of this case, individual corporate officers such as Dalton and Lowry are not personally liable for delinquent contributions owing to the employee benefit plan.[1] We assume, for purposes of deciding these motions to dismiss, the truth of the relevant facts set forth in plaintiffs' complaint.

## BACKGROUND

The Funds are jointly administered multi-employer trust funds established and maintained pursuant to a collective bargaining agreement. They qualify as employee benefit plans within the meaning of ERISA, sections 3(2), 3(3), and 502(d)(1), 29 U.S.C. §§ 1002(2), 1002(3), and 1132(d)(1), and multi-employer plans under ERISA sections 3(37) and 515, 29 U.S.C. §§ 1002(37) and 1145. The purpose of the Funds is to provide fringe benefits to eligible employees on whose behalf employers contribute to the Funds in accordance with the terms of a collective bargaining agreement between the employers and the employees' union, non-party Mason Tenders District Council of Greater New York ("Union").

At all times relevant hereto, defendant Dalton was the president and defendant Lowry was the vice-president of John Lowry, Inc. ("Corporation"), an entity which is not a party to this action. The Corporation, which was an employer in the construction industry, held membership in an employers association, the Building Contractors Association, Inc. ("Association"), which is the exclusive bargaining agent for its members. Pursuant to a collective bargaining agreement (the "Collective Bargaining Agreement") between the Association and the Union, the Corporation of which Dalton and Lowry were officers was obligated to remit fringe benefit contributions to the Funds in connection with the work performed by the Corporation's employees within the Union's jurisdiction. See Collective Bargaining Agreement, Article IV, section 1. We assume, as plaintiffs allege, that both Dalton and Lowry were "vested with authority and control over the ... payment of the required monetary contributions" to the Funds owed by the Corporation under the Collective Bargaining Agreement.[2] See Complaint at paragraphs 8 and 9.

Pursuant to the terms of the Collective Bargaining Agreement, representatives of the Funds conducted an audit of the books of the Corporation. The auditors determined that the Corporation had failed to remit $81,554.34 of fringe benefit contributions to the Funds during the period from June 25, 1981 to September 30, 1983. Plaintiffs now seek to recover payment from Dalton and Lowry individually of the delinquent benefit contributions, plus interest, statutory damages, costs and attorneys' fees in accordance with ERISA section 502(g)(2), 29 U.S.C. § 1132(g)(2). The legal foundation of plaintiffs' claim for the imposition of personal liability on Dalton

---

1. There is no allegation that the LMRA supports plaintiffs' claims for recovery from Dalton and Lowry, who were not parties to the collective bargaining agreement. Accordingly, that claim is dismissed as well. See, e.g., *Carpenters Local Union No. 1846 v. Pratt-Farnsworth,* 690 F.2d 489, 500–501 (5th Cir.1982), cert. denied, [464 U.S. 932] 104 S.Ct. 335, [78 L.Ed.2d 305] (1983); see also *Aacon Contracting Co. v. Association of Catholic Trade Unionists,* 276 F.2d 958 (2d Cir. 1960) Ass'g and adopting 178 F.Supp. 129, 130 (E.D.N.Y.1959).

2. In August of 1982, the Corporation filed a petition for protection under Chapter 11 of the Bankruptcy Code of 1978, 11 U.S.C. § 101, et seq. Subsequently, the bankruptcy proceeding was converted to one under Chapter 7 and a trustee was appointed and qualified. See Memorandum of Law in Support of Defendant Dalton's motion to dismiss ("Dalton Memorandum"), at 1–2.).

and Lowry is the contention that the defendants, as principal corporate officers of the Corporation vested with the authority and control over the payment of benefit contributions, fall within the definition of an "employer" under Title I of ERISA and are therefore liable for unpaid benefits under sections 515 and 502(g)(2).

## DISCUSSION

We begin our analysis with the relevant provisions of ERISA. According to section 515:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

As a mechanism to enforce this statutory obligation, ERISA provides plan fiduciaries such as plaintiff Lanza with the right to maintain a civil lawsuit under section 502(a)(3) to recover section 515 delinquent contributions. The present suit is based on these provisions.

The plain language of section 515 indicates that the statutory obligation to make timely contributions to an employee benefit plan rests on "[e]very employer who is obligated" to make such contributions "under the terms of a collectively bargained agreement." 29 U.S.C. § 1145. The legislative history of section 515, which was added to ERISA by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA") confirms Congress' intent in enacting this statutory provision. According to a report issued by the Senate Committee on Labor and Human Resources, section 515 "imposes a statutory duty to contribute on employers that are *already obligated* to make contributions to multiemployer plans" (emphasis supplied). Senate Committee on Labor and Human Resources (Staff), 96th Congress, 2d Sess. S.1076, The Multiemployer Pension Plan Amendments of 1980: Summary and

Analysis at 44 (Comm. Print 1980). The legislative purpose underlying section 515 was not, as plaintiffs claim, to impose personal liability on corporate officers for delinquent contributions.

Congress' imposition of a statutory obligation to make benefit contributions, specifically tied to the employer's contractual obligation to contribute, was designed "to discourage delinquencies and simplify delinquency collection." 126 CONG.REC. 23288 (daily ed., August 26, 1980) (statement of Sen. Williams and Sen. Javits). Prior to the enactment in 1980 of ERISA section 515, there was no ERISA cause of action for the collection of overdue benefit contributions. It appeared to the principal sponsors of the 1980 amendments, Senators Williams and Javits, that the "[r]ecourse available for collecting delinquent contributions" had become "unnecessarily costly and cumbersome." Id.

In particular, employers had managed to transform "[s]ome simple collection actions brought by plan trustees ... into lengthy, costly, and complex litigation concerning claims and defenses unrelated to the employer's promise and the plan's entitlement to contributions." Id. Section 515 was designed to rectify the problems that had arisen in these pre–1980 collection suits and to implement the principles enunciated in three judicial decisions which the sponsors expressly endorsed: (i) *Huge v. Long's Hauling Company, Inc.*, 590 F.2d 457 (3d Cir.1978), (ii) *Lewis v. Benedict Coal Corp.*, 361 U.S. 459, 80 S.Ct. 489, 4 L.Ed.2d 442 (1960), and (iii) *Lewis v. Mill Ridge Coals, Inc.*, 298 F.2d 552 (6th Cir.1962).

In *Long's Hauling*, the only one of the endorsed cases that arose after passage of ERISA, benefit plan trustees brought suit under section 301 of the LMRA to enforce an alleged contractual obligation to make payment to employee retirement funds. The defendant corporation sought to interpose antitrust violations and unfair labor practices allegedly committed by the employees' union as defenses to the corporation's contractual obligation to contribute

to the retirement funds. The district court rejected these defenses and granted the plaintiff trustees' request for a preliminary injunction to enforce the corporation's commitments. On appeal, the Third Circuit affirmed, holding that the two proffered defenses were unrelated to the contractual promise to pay benefits and therefore were insufficient to enable the employer to bar recovery. *Long's Hauling*, 590 F.2d at 460–61.

Prior to *Long's Hauling*, the United States Supreme Court had reached a similar outcome in *Benedict Coal*, a pre-ERISA suit by trustees to collect certain royalty payments for the benefit of eligible coal miners. In *Benedict Coal*, the Court held that damages occasioned by breach of contract committed by the coal miners' union could not be used as a setoff against the trustees' recovery. *Benedict Coal*, 361 U.S. at 471, 80 S.Ct. at 496. In essence, the Court thereby rejected a defense to payment that was unrelated to the defendant's underlying contractual obligation to make royalty contributions.

A similar defense was at issue in *Mill Ridge*, another of the cases cited with approval by Senators Williams and Javits. In that case, the defendant sought to avoid liability by converting the collection litigation into an examination of alleged misconduct on the part of the trustees in the administration of the benefit plans. Following the reasoning of the Supreme Court in *Benedict Coal*, the Sixth Circuit dismissed the misconduct defenses as "academic." *Mill Ridge*, 298 F.2d at 577.

Section 515 of ERISA was explicitly framed to implement the reasoning of *Long's Hauling*, *Benedict Coal*, and *Mill Ridge* in order to provide a "direct, unambiguous ERISA cause of action to a plan against a delinquent employer." See statement of Sen. Williams and Sen. Javits, supra, 126 CONG.REC. at 23288. Two judicial decisions which Senators Williams and Javits cited as "incorrectly decided," *Trust Fund v. McDowell*, 103 LRRM 2219 (4th Cir.1979), and *Washington Area Carpen-*

*ter Welfare Fund v. Overhead Door Co.*, 488 F.Supp. 816 (D.D.C.1980), further illustrate that the purpose of section 515 was not, as plaintiffs claim, to impose personal liability on corporate officers for delinquent contributions. Neither of the opinions in these criticized cases evidence a judicial refusal to impose individual liability on corporate officers. Rather, these decisions were instances in which courts had allowed defendant employers to avoid their contractual obligations by interposing defenses unrelated to the employer's promise to make payments. See *McDowell*, 103 LRRM at 2221 (Trustees of benefit funds may not bring suit to enforce employer's obligation where union which had negotiated relevant agreement was not certified as a bargaining representative by the NLRB); see also *Overhead Door*, 488 F.Supp. at 819 (Trustees' suit for unpaid contributions may not be maintained absent proof of majority support for union which negotiated relevant contract despite fact that employer made contributions on behalf of some employees). It is clear, then, that the purpose of section 515 is to ensure that courts do not permit contractually obligated defendants to obstruct garden-variety collection actions by alleging defenses unrelated to the contractual commitments to make benefit payments. There is no evidence that Congress' intent was to impose personal liability under ERISA on corporate officers not "already [contractually] obligated" to make benefit payments.

In the case before us, Article VI of the Collective Bargaining Agreement obligated the employer members of the Association, including the non-party Corporation, to make contributions to the Funds on behalf of eligible employees. Dalton and Lowry, as individual corporate officers, were not signatory parties liable under the terms of the Collective Bargaining Agreement. Accordingly, under our analysis and under the facts of this case, Dalton and Lowry are not personally liable under section 515 of ERISA.

Plaintiffs argue that ERISA's definition of an "employer" encompasses corporate

officers such as Dalton and Lowry. Title I of ERISA defines an employer as:

> any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity.

29 U.S.C. § 1002(5). The statutory definition of a "person" includes the term "individual." 29 U.S.C. § 1002(9). Plaintiffs contend that Dalton and Lowry, as principal corporate officers with authority over the Corporation's commitments to the Funds, are individuals acting "in relation to an employee benefit plan." Therefore, the plaintiffs claim Dalton and Lowry are employers with a statutory obligation to make required contributions to employee benefit plans under ERISA. See Plaintiffs' Memorandum of Law in Opposition to Defendants' Motions to Dismiss the Complaint Pursuant to Fed.R.Civ.P. 12(b)(6) ("Plaintiffs' Memorandum") at 5–6.

The principal flaw in plaintiffs' textual analysis is that it places too little emphasis on ERISA section 515, the specific statutory provision which imposes the federal obligation to make benefit plan contributions and which is at the core of this lawsuit. That statutory provision, as we have detailed, is directed at "employers that are already obligated to make contributions to multiemployer plans." The Multiemployer Pension Plan Amendments Act of 1980: Summary and Analysis, *supra*, at 44. Plaintiffs, in seeking to expand the range of parties liable under ERISA, minimize the fact that the ERISA cause of action added in the 1980 amendments was explicitly tied to the extant, though apparently hampered, nonstatutory cause of action against contractually obligated employers.

We are not persuaded that we should override the language and purpose of section 515 pursuant to the plaintiffs' analysis of the definitional sections of ERISA. In support of the claim for imposition of personal liability on Dalton and Lowry as ERISA employers, plaintiffs argue that the term "individual" is "very broad." Plaintiffs' Memorandum at 4. Plaintiffs contend that there is no indication that Congress intended "to limit [the definition of 'individual'] in any way." Id. Plaintiffs acknowledge that under their construction of the statute, "if [the] language is taken literally, any agent or employee whose duties involved the contributions to an employee benefit plan would be personally liable for the delinquencies." Id. at 4 (quoting from *Ernest Balcom v. Southeastern Florida Properties, Inc.,* No. 85–1383, slip op., (E.D.Pa., Nov. 26, 1985). However, they do not urge us to adopt such an extreme approach. Instead, plaintiffs claim that Dalton and Lowry are "personally liable for the Corporation's breach of its contractual and statutory obligations because they were the principal, and perhaps the sole, officers of the Corporation, and had the requisite authority and control ... over the payment of fringe benefit contributions to the Funds." See Affidavit in Opposition of Sara L. Chenetz, Esq. at ¶ 7 (Oct. 10, 1986).

The defendants counter by arguing that in ERISA's "exhaustive list" of the eleven "entities constituting 'persons,' nowhere therein is to be found 'corporate officer.'" Dalton Memorandum at 3–4. The defendants contend that the absence of an explicit reference to a corporate officer reveals Congress' intent not to include corporate officers within the definition.

As we have indicated, we believe that plaintiffs' definitional arguments are misplaced in light of the language and legislative history of section 515. In addition, we conclude that had Congress sought to impose personal liability for delinquent contributions on corporate officers, it would have done so in a more explicit fashion, especially in light of the axiom that corporate officers and corporate shareholders are not ordinarily personally liable for their corporation's obligations. Given the settled corporate law principle of limited liability, the absence of a reference to a corporate officer in the definition of "person" under ERISA may indeed be revealing of Con-

gress' intent. See *Connors v. P & M Coal Company*, 801 F.2d 1373 (D.C.Cir.1986).

Furthermore, Congress' use of the term "officer" in contradistinction to the term "employer" in a separate ERISA definitional provision concerning a "party in interest" suggests that Congress did not intend to include corporate officers within the definition of the term "employer." See 29 U.S.C. § 1002(14). The definition of a "party in interest" is a critical ERISA provision because a variety of transactions between a benefit plan and a party in interest are statutorily prohibited. See 29 U.S.C. § 1106. The list of entities that fall within the ERISA term "party in interest" includes an "employer, any of whose employees are covered by [an employee benefit plan]." The definitional list, however, does not stop there. The list also includes "an employee, officer, director (or an individual having powers or responsibilities similar to those of officers or directors), or a 10 percent or more shareholder directly or indirectly" of an "employer" whose employees are covered by an employee benefit plan. 29 U.S.C. § 1002(14)(H). In addition, an ERISA "party in interest" includes "an owner, direct or indirect, of 50 percent or more of—(i) the combined voting power of all classes of stock entitled to vote or the total value of shares of all classes of stock of a corporation ... which is an employer" with covered employees. 29 U.S.C. § 1002(14)(E).

The definitions outlined above encompass persons and entities among those who, provided they act in relation to an employer benefit plan, the plaintiffs would hold personally liable for a corporation's delinquent contributions. In our view, the fact that the term "employer" is used in a separate category from the term "officer" in the list of those who are ERISA parties in interest strengthens the conclusion that an employer corporation's officers are not also employers who are liable for delinquent contributions.[3]

At oral argument, counsel for the plaintiffs argued that the Court should examine the "economic reality" of a corporate entity and thus hold personally liable for unpaid contributions those within a corporation who have operational control over payment to employee benefit plans. Under the plaintiffs' theory, all such "persons" would be ERISA employers bound pursuant to section 515. That the "party in interest" definition in ERISA expressly defines an "officer" as well as other persons who as a matter of economic reality may have operational control over a corporation's payments to a benefit plan demonstrates that if Congress had intended to enact an economic reality approach to an employer's liability for delinquent contributions, it could have invoked in section 515 or in the definition of the term "employer" portions of the definitions used to describe parties in interest.[4]

---

**3.** To adopt plaintiffs' definitional analysis would render superfluous at least portions of the ERISA definition of a "party in interest." If the term "individual" and, thus, the term "employer," includes corporate officers, it would have been unnecessary for Congress, having already included an "employer" within the definition of a "party in interest," also to add an "officer" of an "employer."

**4.** Additional support for our interpretation lies in the fact that Congress was explicit in the provisions of ERISA that do impose personal liability on corporate officers and other parties in interest. In the statutory provision that enforces the prohibitions on transactions between a benefit plan and a party in interest, ERISA authorizes the Secretary of Labor to "assess a

civil penalty against ... a party in interest" who enters into a prohibited transaction. The penalty "may not exceed 5 percent of the amount involved" unless the transaction is not corrected, in which case "such penalty may be in an amount not more than 100 percent of the amount involved." 29 U.S.C. § 1132. Similarly, the finance provisions of ERISA, included in the Internal Revenue Code, impose a comparable tax on "disqualified persons," a term which is essentially equivalent to a "party in interest," and which includes an "officer" of an employer corporation. I.R.C. § 4975(e)(2). The Code imposes personal liability for the tax. It provides that the tax "shall be paid by the disqualified person who participated in the prohibited transaction." I.R.C. § 4975(b).

Plaintiffs argue that the acceptance of their textual analysis and the consequent imposition of personal liability on corporate officers who act in relation to an employee benefit plan would further ERISA's purpose of ensuring that "employees receive fringe benefits created through private pension plans and promised to employees." Plaintiffs' Memorandum at 8. According to the plaintiffs, this broad remedial purpose is "particularly true" of the MPPAA, which added to ERISA the statutory language in section 515 concerning delinquent contributions. Id. Plaintiffs highlight in this connection the existence of a statutory right to an award of interest and attorney's fees in successful actions to recover delinquent contributions. See 29 U.S.C. § 1132(g)(2).

We agree that ERISA is a statute with a broad remedial purpose; to make sure that "if a worker has been promised a defined pension benefit on retirement—and if he has fulfilled whatever conditions are required to obtain a vested benefit—he actually will receive it." *Nachman Corp. v. Pension Benefit Guarantee Corp.* 446 U.S. 359, 375, 100 S.Ct. 1723, 1733, 64 L.Ed.2d 354 (1980). The MPPAA, which addressed primarily the problem of employer withdrawal liability, is consistent with this policy goal, but also reflects Congress' desire to fulfill ERISA's aims "by fostering plan continuation and growth." H.R.Rep. No. 869 (I), 96th Cong. reprinted in 1980 U.S. Code Congressional and Administrative News 2918, 2931.

In the bill reported out of the House Committee on Education and Labor, which became the foundation of the MPPAA, Congress sought to arrive at "equitable solutions" to the problems it addressed. Id. Particularly noteworthy throughout the legislative history is Congress' expression of its intent to encourage employers who previously had not been part of multi-employer plans to join such plans. For example, in explaining that the bill allows plans in reorganization to avoid insolvency by reducing benefits, the House Committee emphasized that a main purpose of such a provision "is to avoid the potential chilling effect that the prospect of employer liability has on benefit improvements if employers believe that they are locked into paying for those benefits if the plan gets into financial trouble." Id. at 2935. See 29 U.S.C. §§ 1421–1426.

Similarly, employer withdrawal liability requirements were framed "[i]n order to avoid creating a severe disincentive to new employers entering a plan...." H.R.Rep. No. 869(I), *supra,* at 2935. With regard to the level at which pension benefits would be guaranteed by the Pension Benefit Guarantee Corporation in the event of unavoidable plan insolvency, the House Report notes that "high guarantees offer illusory protection" and further explains that "[a]fter much consideration, the committee has determined that plan continuation, which alone gives participants the opportunity for benefit improvements and future accruals, should be encouraged." Id. at 2937. See 29 U.S.C. § 1361.

The legislative history marshaled above reveals the force of Congress' desire to encourage the growth and maintenance of multi-employer plans. It can hardly be doubted that the imposition of personal liability on corporate officers for an employer corporation's delinquent benefit payments would powerfully detract from the MPPAA's goal of fostering the growth of multi-employer plans. In our view, to conclude that Congress intended to "pierce the corporate veil" in enacting section 515 and thereby hold corporate officers acting in relation to an employee benefit plan personally liable for a corporation's delinquency would not only contradict the language and legislative history of section 515, but would also undercut the policy goals of the 1980 amendments.

The case law on the question presented in these motions to dismiss is not extensive. It appears that only one court in the Second Circuit has squarely addressed the issue before us. In that case, *Trustees of the UIU Health and Welfare Fund, et al., v. New York Flame Proofing Company,*

*Inc., et al.,* —— F.Supp. —— No. 85–5905, slip op., (S.D.N.Y. May 22, 1986), Judge Sweet rejected a delinquent contributions claim against the president and sole shareholder of the defendant corporations. As the court observed, "[t]here is a presumption that the corporation is a separate entity from the shareholders or officers and thus only a corporation is generally liable for violations of ERISA." *Id.* Given that the plaintiffs in that case had failed to make a sufficient showing that the individual defendant had used the corporations to pursue personal business or with an intent to defraud, the court rejected plaintiffs' attempts to pierce the corporate veil and hold the individual defendant personally liable for the delinquent payments. We note that here no claim was made that defendants acted in a manner which would, as a matter of general corporate law, occasion piercing the corporate veil.

The Third Circuit reached a similar conclusion in *Solomon v. Klein,* 770 F.2d 352 (3d Cir.1985). See also *Sheet Metal Workers v. Laing Sheet Metal, Inc.,* No. 85–1383, slip op. (E.D.Pa., November 26, 1985). [Available on WESTLAW, DCTU database]. The sole question in *Solomon* was whether Klein, the holder of 50 percent of the stock and the president and chief executive officer of the employer corporation, could be held personally liable for amounts due to a retirement fund pursuant to a collective bargaining agreement between the corporation and a union. Holding that Congress did not intend to expose corporate officers to personal liability for delinquent contributions, the Third Circuit adopted the reasoning of Chief Judge Teitelbaum in *Combs v. Indyk,* 554 F.Supp. 573 (W.D.Pa.1982). *Solomon,* 770 F.2d at 354. The court in *Combs,* another delinquent contributions action against officers of a corporate signatory to a collective bargaining agreement, had emphasized, as we emphasize here, that section 515 of ERISA obligates employers to make benefit contributions "in accordance with their obligations under multi-employer plans or collectively bargained agreements."

*Combs,* 554 F.Supp. at 575. Indeed, Judge Teitelbaum highlighted the fact that the individual defendant corporate officers were not signatories to the collective bargaining agreement. *Id.* The Third Circuit, likewise, followed this approach in *Solomon. Solomon,* 770 F.2d at 354.

Plaintiffs reject the Third Circuit approach and rely on a number of cases, such as *Massachusetts State Carpenters Pension Fund v. Atlantic Diving Co., Inc.,* 635 F.Supp. 9 (D.Mass.1984), which reach a different conclusion. See also *Alman v. Frank's Sportswear,* No. 84–2042–5, slip op., (D.Mass. Jan. 24, 1985); *Rubinstein v. Tri-State Transport, Inc.,* 646 F.Supp. 1 (D.Mass.1984); *Alman v. Servall Manufacturing Company,* No. 82–0746–MA, slip op., (D.Mass. Apr. 9, 1984), and *Ernest Balcom v. Southeastern Florida Properties, Inc.,* No. 84–1576, slip op., (S.D.Fla. June 28, 1985). In essence, this line of cases, which originates principally in opinions of the Massachusetts district courts, stands for the proposition that corporate officers and others with control of corporate operations and a significant ownership interest are ERISA "employers" and may be subjected to personal liability.

We agree with the Third Circuit's rejection in *Solomon* of the principles set forth in these decisions. *Solomon,* 770 F.2d at 354. In our view, the cases on which plaintiffs rely ignore the explicit link in ERISA between an employer's statutory obligation to contribute to a benefit plan and the employer's existing contractual obligation to make benefit payments. In addition, as we have discussed, the interpretation of the term "employer" offered in the cited Massachusetts cases and by the plaintiffs herein, is misplaced and in any event unpersuasive.

It appears that the ERISA cases on which the plaintiffs rely adopt by analogy the "economic reality" approach of the First Circuit to the interpretation of the Fair Labor Standards Act, the minimum wage law enacted in 1938. See e.g., *Donovan v. Agnew,* 712 F.2d 1509 (1st Cir.1983).

As the Third Circuit observed with respect to Atlantic Diving, *supra,* which draws on the 1st Circuit's FLSA analysis, "[this] method of analogy is, of course, a legitimate method of reaching a decision. But in matters of statutory construction of ERISA, our responsibility is to ascertain the intention of Congress in ERISA and not its intention in enacting a separate federal statute." *Solomon,* 770 F.2d 354–55. We see no indication in the legislative history that would permit us to adopt the "economic reality" approach here. Rather, the language and legislative history clearly support the defendants' argument that ERISA section 515 and the correlative definitional provisions do not furnish the plaintiffs with a cause of action against the Corporation's chief officers.

Defendants Dalton and Lowry draw further support for their motions to dismiss from a number of cases that address the meaning of the term "employer" in the context of ERISA's imposition of withdrawal liability on employers who terminate their participation in benefit plans. Title IV of ERISA provides that under certain circumstances an employer who withdraws from a multi-employer plan is liable for a share of the employees' unfunded vested benefits at the time of withdrawal. As is the case with respect to delinquent benefit contributions, ERISA creates a cause of action for the collection of unpaid withdrawal liability.

*P & M Coal, supra,* a recent decision decided by the Court of Appeals for the District of Columbia Circuit, posed in the withdrawal liability context an issue similar to the one before us. The plaintiffs in *P & M Coal* sought to recover from the individual defendant corporate officers sums owed as withdrawal liability. The district court found for the plaintiffs and held that the defendants were personally liable for the unpaid sums. On appeal, the D.C. Circuit reversed. In deciding whether the definition of "employer" applicable in the Title IV withdrawal liability context, includes an active owner, the court observed:

We find nothing in either the language or purpose of MPPAA to justify so significant a compromise of the corporate principle of limited liability, nothing to suggest that Congress intended to subject owner-operators of a closely held corporation to personal liability merely because they actively participated in running the business. Acceptance of the district court's 'interest and control' test would not only subvert the major purpose of incorporation, but would discourage future participation in multi-employer pension plans—a result clearly contrary to one of the MPPAA's stated objectives

*P & M Coal, supra,* 801 F.2d at 1376. See also *Canario v. Byrnes Express and Trucking Co., Inc.,* 644 F.Supp. 744, 750–751 (E.D.N.Y.1986) (ERISA legislative history discloses no indication that Congress, in withdrawal liability context, intended "to abrogate the normal state law immunity of corporate officers from corporate liability").

While it is true that the *P & M Coal* court did not decide the scope to be given to the term "employer" in Title 1 of ERISA,[5] we believe that the D.C. Circuit's legal analysis is no less applicable in the context of this Title I collection suit for delinquent contributions. Just as the *P & M Coal* court could find nothing within the language or structure of the MPPAA that requires acceptance of the proposition that Congress intended to induce "controlling shareholders to surrender the limited liability protection afforded by corporate law as a condition for allowing their companies to participate" in qualifying employee benefit plans, we are similarly unpersuaded that

---

**5.** The D.C. Circuit, finding that Title IV of ERISA does not contain its own definition of an "employer," adopted the definitions set forth in Title I and applied them to the Title IV case before it. In so doing, the court refrained from deciding any Title I questions. *P & M Coal, supra,* at 1375.

Congress meant to require corporate officers to incur personal liability for the delinquent benefit contributions of corporate employers.[6]

Our conclusion that Dalton and Lowry are not personally liable under ERISA for the Corporation's delinquent payments does not mean that a benefit plan fiduciary will never have a remedy against individual corporate officers. If, for example, an ERISA plaintiff can prove that a corporate officer has used the employer corporation as an "alter ego" a court may under traditional common law principles "pierce the corporate veil" and impose personal liability for the corporation's contractual and statutory obligations. This precept applies in the ERISA context and courts which have determined that corporate officers are not individually liable in both the delinquent contributions and the withdrawal liability contexts have so recognized. See, e.g., *New York Flame Proofing, supra; P & M Coal,* supra; see also *Operating Engineers Pension Trust v. Reed,* 726 F.2d 513, 515 (9th Circuit 1984).

In the present case, however, there is no allegation that the defendants used the Corporation for purely personal business or otherwise failed to maintain its corporate identity. At oral argument, counsel for plaintiffs represented that veil-piercing is simply not an issue under the facts of this case.[7]

## CONCLUSION

For the reasons we have stated, plaintiffs have failed to allege in their complaint facts upon which relief might be afforded under ERISA. Accordingly, we grant defendants' motions to dismiss.

Complaint dismissed.

SO ORDERED.

NOTE: Subsequent to the issuance of this Opinion on Nov. 24, 1986, the Court was advised by letter that the parties have agreed to settle the matter. The parties jointly requested that the Court vacate the Opinion. We Hereby grant that request and the foregoing Opinion is vacated.

---

**6.** While we recognize that a collection action for delinquent contributions may implicate concerns that are not present in a suit for unpaid withdrawal liability benefits, plaintiffs' attempts to distinguish as "totally irrelevant" the withdrawal liability case law is not compelling. See Plaintiffs' Memorandum at 11. Plaintiffs appear to maintain that an employer's failure to make withdrawal liability payments is by definition less heinous than a failure to make required benefit contributions. It should be noted, however, that Congress enacted identical enforcement mechanisms with respect to both sets of actions. Under 29 U.S.C. § 1451(b):

[i]n any action under this section to compel an employer to pay withdrawal liability, any failure of the employer to make any withdrawal liability payment within the time period prescribed shall be treated in the same manner as a delinquent contribution (within the meaning of Section 1145 of this title). Cf. *Lads Trucking v. Board of Trustees,* 777 F.2d 1371 (9th Cir.1985) (mandatory attorney's fees provision applies in both delinquent contributions and withdrawal liability contexts).

**7.** We note, without expressing any view on the subject, that it is possible that plaintiffs have a cause of action against the individual defendants under New York Business Corporation Law § 630. See *Sasso v. Vachris,* 66 N.Y.2d 28, 494 N.Y.S.2d 856, [484 N.E.2d 1359] (N.Y.1985).